ZION'S PROPERTIES, INC., a Utah Cor-
poration, Plaintiff and Appellant,

v.

Forrest C. HOLT et al., Defendants
and Respondents.

No. 13922.

Supreme Court of Utah.

Aug. 4, 1975.

1320

Lowell v. Summerhays, Summerhays & Hatch, Salt Lake City, for plaintiff and appellant.

Zar E. Hayes, Pugsley, Hayes, Watkiss, Campbell & Cowley, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Plaintiff, Zion's Properties, Inc., as assignee of a purchaser's interest in a real estate contract on commercial property, located at 11th South and State Street in Salt Lake City, sued to quiet title and to enjoin the ·vendors, Holts, from interference with plaintiff's possession. On the basis of depositions, interrogatories and documentary evidence, the district court ruled that the purchaser's interest had been forfeited and granted the defendants' motion for summary judgment. The plaintiff appeals, contending: (1) that defendants had prevented it from performing the contract; (2) that its obligations under the contract had been modified by oral agreement; and (3) that it had tendered the required payments.

Plaintiff's assignor, the Great Southern, Inc., purchased the property from Forrest C. and Virginia W. Holt (hereinafter referred to as "Holts") on a contract executed January 31, 1973. It provided for payment of $40,000: $5,000 down, and pay-

ments of $7,000, plus interest at 8 per cent on or before August 1, 1973; $7,750 plus interest on or before February 1, 1974; and similar payments annually on the first day of each February until paid in full. It was a uniform real estate contract containing the usual covenants, including that the buyer would pay the insurance and taxes.

Great Southern made the down payment. On July 18, 1973, it assigned all of its interest in the property to Zion's Properties, Inc. (hereinafter referred to as "Zion's"), who paid the following additional amounts: $1,000 on August 1, 1973; $5,000 on September 12, 1973; $500 on December 10, 1973; and $1,000 on December 16, 1973, but did not make the $7,750 plus interest payment due on February 1, 1974.

On February 4, 1974, the Holts gave notice to Zion's that payments had not been made as required by the contract, demanding that all delinquencies, including payments due, interest and taxes must be paid within five days (in accordance with the forfeiture provision of the contract), or the Holts would consider the contract terminated.[1] This demand was not complied with and no further payments were made.

Plaintiff's argument that the conduct of the defendants prevented them from making their payments under the contract rests on this assertion: that one of the defendants, Forrest C. Holt, was storing personal property in one of the buildings, which limited their ability to derive income therefrom.

■■■ We accept the correctness of plaintiff's argument that there is implied in any contract a covenant of good faith and cooperation, which should prevent either party from impeding the other's perform-

ance of his obligations thereunder;[2] and that one party may not render it difficult or impossible for the other to continue performance and then take advantage of the non-performance he has caused.[3] But this principle must have practical application to the circumstances in such a way that it does in fact prevent performance. It is not every minor failure, which could otherwise be remedied, which will justify non-performance. It must be something so substantial that it could be reasonably deemed to vindicate the other's refusal to perform; and this is a matter of affirmative excuse or justification, which the party so claiming has the burden of demonstrating.

In regard to this contention of the plaintiff these facts are significant: that the materials being stored by Forrest Holt had been there from the time of the original contract of sale and with the approval of the purchaser, plaintiff's assignor Great Southern; and that this storage occupied only some unspecified "portion" of one of the buildings. When plaintiff Zion's took the property over these same circumstances existed and the rest of the property was leased to others and earning rentals. Despite the fact that Forrest Holt had some personal property in one of the buildings the plaintiff has failed to make it known anywhere in the record what portion or percentage of such a building was so occupied.

■■■ If plaintiff regarded that situation as being of such great importance, it could have demanded the removal of the property when it first took over the contract, or put the Holts on timely notice that it must be removed or that some specified rent would be charged for the space occupied. Nothing of this character was done, in writing or otherwise. In fact, except for plaintiff's own assertions, no issue was

---

1. No question exists as to waiver of strict compliance with the terms of the contract, cf. McBride v. Stewart, 68 Utah 12, 249 P. 114 (1926); and Kohler v. Lundberg, 54 Utah 339, 180 P. 590 (1919).

2. See 17 Am.Jur.2d, Contracts, § 256; 17A C.J.S. Contracts § 468.

3. See Haymore v. Levinson, 8 Utah 2d 66, 328 P.2d 307 (1958); 17 Am.Jur.2d, Contracts, §§ 425–426; 17A C.J.S. Contracts §§ 468–469.

raised about the personal property being there until after controversy over the forfeiture developed. We are not persuaded that we should disagree with the view taken by the trial court that the plaintiff did not, and could not, make a showing that this storage was of sufficient substance and materiality to justify its non-performance.

■ Plaintiff's second contention is that on or about December 8, 1973, the Holts had orally agreed to a modification of the contract to allow for reduced payments until the personal property was removed. It says that the payment of $500 on December 10th and the $1,000 paid on December 16th were made in accordance with that oral agreement. In support of that claim plaintiff points to the fact that on the latter check there are the words, "as per agreement of 12–8–73." This, plaintiff argues, is a sufficient memorandum in writing to modify the original contract and satisfy the statute of frauds. It is elementary that when a contract is required to be in writing, the same requirement applies with equal force to any alteration or modification thereof.[4] More importantly here, any such modifying agreement must be sufficiently certain and unequivocal in its terms that the parties will understand what it is and what is to be done under it.[5] Neither the check, nor the quoted notation thereon, make any such recitals and they therefore do not meet that requirement.

■ Plaintiff also claims, in the alternative, that the oral agreement is removed from the statute of frauds due to the equitable principle of part performance, which is part of our law by statute,[6] and decision.[7] The observations just made pertaining to oral modification also apply here. The payments referred to could well be regarded as payments on the written contract and they do not unequivocally relate to any oral contract.

■ Plaintiff's final argument is that it tendered the payments due under the contract on four separate occasions. Its evidence relates to two occasions after the forfeiture had occurred. These are thus not material to the issues involved here. With respect to the other two, these observations are pertinent: A tender requires that there be a bona fide, unconditional, offer of payment of the amount of money due, coupled with an actual production of the money or its equivalent.[8] What occurred was that plaintiff's president discussed with the defendants the prospect that payment would be made under certain conditions. But there was no actual tender of the amounts due under the contract within the foregoing definition, nor even a tender of such amounts due, less a reasonable and specific set-off for storage of the defendants' property on the premises.

■ The immutable proposition faced by the plaintiff in this case is this: that unless there is some showing of legal excuse or justification for failure to perform the obligations of a contract, it must be enforced according to its terms.[9] The facts of controlling significance are: that when it took over the contract on July 18, 1973, it knew that it was assuming the duty to pay 13 days later, on August 1, $7,000 principal, plus $1,600 interest, a total of $8,600, which obligation it did not meet. It did make the payments listed above, aggregating $7,500 paid by December 16, 1973,

---

4. See Sec. 25–5–1, 3, Utah Code Ann. 1953; and Coombs v. Ouzounian, 24 Utah 2d 39, 465 P.2d 356 (1970); Combined Metals v. Bastian, 71 Utah 535, 267 P. 1020 (1928).

5. See Baugh v. Logan City, 27 Utah 2d 291, 495 P.2d 814 (1972); Birdzell v. Utah Oil Refining Co., 121 Utah 412, 242 P.2d 578 (1952).

6. Sec. 25–5–8, Utah Code Ann. 1953.

7. Holmgren Brothers, Inc. v. Ballard, Utah, 534 P.2d 611 (1975), and authorities cited therein.

8. 74 Am.Jur.2d p. 545; as to tender by check, unless the offeree objects to payment by check see Sec. 70A–2–511, U.C.A.1953.

9. Paggi v. Skliris, 54 Utah 88, 179 P. 739 (1919).

thus $1,100 short of the amount past due; and when the next annual installment of something over $8,000, came due on February 1, 1974, it failed to make that payment. This brought the defendants' notice of forfeiture, to which the plaintiff made no responsive performance, but instead attempted to justify non-performance on the grounds discussed herein.

Upon consideration of the total circumstances as shown by the depositions and documentary evidence, we are not persuaded that the trial court was in error in concluding that plaintiff has raised no issue of material fact which if resolved in its favor would entitle it to prevail. Therefore the summary judgment will not be disturbed.

Affirmed. Costs to defendants (respondents).

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.