**JOHN PRICE ASSOCIATES, INC., a corporation, Plaintiff and Respondent,**

v.

**Richard J. DAVIS, and Connie M. Davis, Defendants and Appellants.**

No. 15474.

Supreme Court of Utah.

Dec. 14, 1978.

David K. Smith, Salt Lake City, for defendants and appellants.

Kent B. Linebaugh, of Jardine & Baldwin, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

John Price Associates Inc. sued on a promissory note for $10,000 executed by defendants Richard J. Davis and Connie M. Davis as payment to plaintiff of the balance due on a large nursing home construction project. By defense and counterclaim, the defendants asserted that plaintiff had failed to complete the project within the agreed time, which resulted in damages to the defendants by losing advantages of long-term financing. Consequent to various motions and proceedings, recital of the details of which is unnecessary, upon the basis of undisputed facts appearing from the evidence presented, the trial court granted plaintiff's motion for a directed verdict and awarded judgment for the face of the note, plus interest and attorneys fees. Defendants appeal, contending that there are disputed issues on material facts which they were entitled to have the jury determine.

The parties entered into a construction contract on August 28, 1972, for the construction of a nursing home on 4600 Highland Drive in Salt Lake City, Utah. Plaintiff Price (the contractor), under the terms of contract was to receive $720,000. Completion was scheduled for June 15, 1973.

The defendants (the owners) obtained construction financing from Commercial Security Bank in the amount of $800,000 of which $710,000 was earmarked to go to the plaintiff (contractor). To make up the balance on the construction contract the defendants executed the promissory note for $10,000 which is the subject of this suit.

The main contract contained a provision for change orders in certain contingencies. It called for the furnishing of the plans by October 1972. But they were not actually furnished until four months later, January 1973. Due to this delay, the parties agreed to change order No. 1, extending the date for completion of construction from June 15, 1973 to August 1, 1973. When other delays occurred, on August 27, 1973, the parties executed change order No. 2. It extended the completion time to November 30, 1973, and required the plaintiff to pay Commercial Security Bank the costs of extending of the financing. An important aspect of that change order is that it contains this statement in a separate paragraph:

It is expressly understood and agreed that by execution of this Change Order No. 2, owners—[defendants] *in no way waive any claim* which they may have against contractor by reason of contractor's failure to complete the project on or before August 1, 1973.

Subsequently, there were negotiations about another change order, No. 3, which was never executed.

A certificate of occupancy was issued upon the premises on December 26, 1973, and a certificate of substantial completion was executed by the plaintiff and countersigned by the defendants on March 18, 1974. Meanwhile, before the building was fully completed, the State Fire Marshall had ordered certain construction changes in the doors to meet safety requirements. On March 1, 1974, another change order, No. 4, was agreed to and executed by the parties. It listed the additional construction costs and recited the mutual agreement to extend the time necessary to complete that work. But significantly, it did not contain any reservation of claim against the plaintiff contractor for failure to complete the project within the time previously agreed.

In support of their claim for damages the defendants place reliance primarily on the above-recited reservation which they caused to be placed in change order No. 2, executed August 27, 1973, that in agreeing to it they did not "waive any claim which they may have against the contractor [plaintiff] . . ." for the latter's failure to com-

plete the project on or before August 1, 1973.

In response to the defendant's argument and in support of the trial court's ruling, the plaintiffs point to the several subsequent events in which the defendants made no such reservation and therefore were properly deemed to have accepted the property as completed without any reservation as to damages for delay in construction. One of these is the certificate of substantial completion which the defendants countersigned in March of 1974. Another is that that same month they likewise agreed to and signed change order No. 4 by which the parties agreed to certain further changes in the construction and which contained a separate and easily noticed statement typed in at the end thereof that: "*the contract time will be increased as necessary* to complete the work."

In determining the effect of the documents relied upon by the respective parties herein, the trial court was undoubtedly impressed by the fact that in change order No. 2 the defendants took care to see that there was added thereto the provision that they did not waive any claim for damages they may have for delay in construction, which clearly indicates both their awareness of and the necessity for making such a reservation if they desired to later assert such a claim, whereas, in the later executed change order No. 4, they made no such provision.

What seems even more persuasive is the fact that another six months later, and after the work was completed, on September 12, 1974, the defendants authorized what was referred to as the "final payment" of $10,461 from the construction loan funds from the Commercial Security Bank, again without indicating any claim or reservation of claim for damages because of delay in construction of the nursing home.[1] To be considered in connection with this is the following clause in the original contract:

*The making of final payment shall constitute a waiver* of all claims by the Owner except those arising from (1) unsettled liens, etc. (other exceptions not applicable here). [Emphasis added.]

On the basis of what has been said above about the execution by the parties of the documents referred to, together with the fact that the defendants had asserted no claim for damages until they did so in response to this suit upon the promissory note, we see no reason to disagree with the view of the trial court that the defendants should be deemed to have waived any claim for damages they may have had for delay in construction and that judgment on the note sued upon was justified.

Plaintiff cross-appeals, complaining of the refusal of the trial court to allow as part of its costs the taking of defendants' depositions. These observations are pertinent: the expenses of taking depositions are allowable as costs only if it appears to the court: (1) that they were reasonably necessary; (2) the burden of so demonstrating is upon the party claiming such expenses as costs; (3) whether that burden is met is within the sound discretion of the trial court; and (4) its ruling thereon is presumed to be correct and will not be disturbed unless it is so unreasonable as to manifest a clear abuse of discretion.[2] We recognize that the parties each make plausible arguments as to the necessity and use of the depositions. This appears to be a matter upon which reasonable minds could differ. Consequently, in applying the foregoing rules we are not convinced we should disagree with the trial court's conclusion in disallowing those expenses as costs.

Affirmed. Costs on appeal to plaintiff (respondent).

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

---

1. The term "final payment" as thus used can only refer to the disbursement of the final $10,461 of the $710,000 construction loan funds held by the bank and can have no reference to the $10,000 note previously executed by the defendants as their initial payment on the contract and which is the subject of this suit.

2. *First Security Bank of Utah, N. A. v. Wright*, Utah, 521 P.2d 563.