Lee A. FITZGERALD and Helen
Fitzgerald, his wife, Plaintiffs
and Appellants,

v.

Boyd CORBETT and Keith Gurr,
Defendants and Appellees.

No. 870444.

Supreme Court of Utah.

May 16, 1990.

M. Dayle Jeffs, Provo, for plaintiffs and appellants.

James R. Brown, Salt Lake City, for defendants and appellees.

HALL, Chief Justice:

This case is on appeal for the third time from the Fourth Judicial District Court, Utah County. Initially, two consolidated appeals ("first appeals") were dismissed with prejudice on November 1, 1982.[1] A subsequent appeal ("second appeal") challenged the propriety of the trial court's order and judgment of April 19, 1983, re-

---

1. *Corbett v. Fitzgerald,* No. 18529 (Utah), *appeal dismissed* Nov. 1, 1982; *Corbett v. Fitzgerald,* No. 18594 (Utah), *appeal dismissed* Nov. 1, 1982.

garding damages. We affirmed on all issues properly before the court.[2] Prior to the dismissal of the first appeals, the parties entered into a settlement agreement, on September 10, 1982, which precipitated the dismissals. This third appeal is from a trial court ruling granting specific performance of the September 10, 1982 settlement agreement.

## FACTS

Commencing in January 1977, Lee A. Fitzgerald and Helen Fitzgerald, who are husband and wife, began purchasing property in Cedar Valley, Utah, from a variety of sellers. On February 1, 1977, Fitzgeralds entered into an earnest money agreement with Boyd Corbett and Keith Gurr (hereinafter "Corbett and Gurr") for the sale of a portion of the Cedar Valley property. After a series of lengthy business dealings including earnest money receipts, offers to purchase, uniform real estate contracts, and options to purchase, the parties reached an impasse with regard to over payments, amounts owed, and the exercise of the options to purchase.

In 1981, Corbett and Gurr commenced suit against Lee A. Fitzgerald and Helen Fitzgerald (hereinafter "defendants I") and Perry G. Fitzgerald and Carolyn S. Fitzgerald (hereinafter "defendants II") to resolve the differences in the sale of the property. On February 9 and 10, 1982, a bench trial was held, and on May 4, 1982, the trial court issued a memorandum decision reflecting judgment in favor of Corbett and Gurr against Fitzgeralds in the amount of $4,709.96; however, the trial court ruled that Corbett and Gurr had no interest in the properties involved in the dispute. Corbett and Gurr filed a notice of appeal from the memorandum decision on May 17, 1982.[3] On June 25, 1982, the trial court entered judgment on the memorandum decision and Corbett and Gurr filed an additional notice of appeal.[4]

On September 10, 1982, defendants I and Corbett and Gurr entered into a settlement agreement wherein Corbett and Gurr agreed, among other things, to "settle all legal actions, lawsuits, appeals to the Supreme Court" concerning the Cedar Valley property. Shortly after the execution of the settlement agreement, Corbett and Gurr allowed Fitzgeralds' motions to dismiss the pending appeals to go unopposed in order to comply with the provision of the settlement agreement to settle all legal actions. The appeals were dismissed with prejudice on November 1, 1982.

After the first appeals were dismissed, defendants II filed motions to amend the judgment entered June 25, 1982. Defendants II requested that the judgment be amended to reflect an award of money damages to defendants II, who were also involved in the lawsuit, rather than require a reconveyance that had been ordered in the original judgment. After hearing the matter, the trial court entered an order and judgment dated April 19, 1983, wherein the court amended and corrected the judgment to reflect money damages to defendants II rather than require Corbett and Gurr to reconvey the property. The trial court found reconveyance impossible because Corbett and Gurr had already disposed of the property to third parties.

Corbett and Gurr appealed the trial court's judgment in a second appeal to this court.[5] We held that some of the second appeal issues were raised in the first appeals that were dismissed with prejudice and therefore those issues would not be considered on the second appeal.[6] We also affirmed the trial court on all issues properly before it, specifically, the method and character of the payment of damages.[7]

On the day the first appeals were dismissed, November 1, 1982, Corbett recorded two notices of interest on the Cedar Valley property in the office of the Utah

2. *Corbett v. Fitzgerald,* 709 P.2d 384 (Utah 1985).

3. *Corbett,* No. 18529.

4. *Corbett,* No. 18594.

5. *Corbett v. Fitzgerald,* 709 P.2d 384 (Utah 1985).

6. *Id.* at 386 & n. 1.

7. *Id.* at 386.

County Recorder, claiming that Fitzgeralds had not honored the September 10, 1982 settlement agreement. Fitzgeralds filed the present suit against Corbett and Gurr on May 6, 1983, claiming damages for slander of title resulting from the recording of the notices of interest, and Corbett and Gurr counterclaimed for specific performance of the September 10, 1982 settlement agreement. The trial began on October 24, 1985, and continued from time to time until November 6, 1986. In an order and judgment dated October 27, 1987, the trial court ordered as follows: (1) that the two notices of interest be removed, (2) that specific performance of the September 10, 1982 settlement agreement be enforced, (3) that Corbett and Gurr pay Fitzgeralds $11,000 and that Fitzgeralds convey to Corbett and Gurr 320 acres in Cedar Valley, (4) that Fitzgeralds honor past sales of Cedar Valley property made by Corbett and Gurr to various third-parties, and (5) that Fitzgeralds recover no damages.

## ISSUES

The issues on this appeal include (1) whether the settlement agreement of September 10, 1982, is enforceable; (2) whether the provisions of the settlement agreement requiring Fitzgeralds to honor past sales by Corbett and Gurr are barred by the doctrine of res judicata; (3) whether the trial court erred in admitting extrinsic evidence to ascertain the intent of the parties to the settlement agreement; and (4) whether the trial court erred in failing to award damages to Fitzgeralds for slander of title.

## SETTLEMENT AGREEMENT

After the first trial and while two appeals therefrom were pending in this court, the parties entered into the settlement agreement dated September 10, 1982. Pur-

suant to the settlement agreement, Corbett and Gurr agreed to (1) "settle all legal actions, lawsuits, appeals to the Supreme Court ..." and (2) pay Fitzgeralds "$11,-000.00 in three annual installments of $3,667.00 plus interest at 7% on principle [*sic*] balance owing beginning Feb. 1, 1983 and annually thereafter until principle [*sic*] and interest is [sic] paid in full." As part of the settlement agreement, Fitzgeralds promised to (1) "give by Warranty Deed 320 acres located in [Cedar Valley]" and (2) "honor all Corbett and Gurr's previous sales." The entire settlement agreement, was subject to payment by Corbett and Gurr to Fitzgeralds "in excess of $49,-000.00 on the DuPratt contract on this 10th day of September, 1982."

Fitzgeralds first claim that the trial court erred in finding the settlement agreement enforceable and ordering specific performance. Fitzgeralds argue that Corbett and Gurr breached the settlement agreement because they failed to (1) settle all legal actions involving the Cedar Valley property; (2) tender payment of the $11,000; and (3) make payment of the $49,000 due on the date specified in the September 10, 1982 agreement.

The settlement agreement entered into by the parties is, in essence, a contract. Questions of whether a contract is ambiguous because of uncertain meaning of terms, missing terms, or facial deficiencies are questions of law that must be determined by the court before parol or extrinsic evidence may be admitted to clarify the contractual intent of the parties.[8] Questions of intent as determined by extrinsic evidence are questions of fact to be decided by the trier of fact and are subject to the "clearly erroneous" standard of review.[9]

## SETTLEMENT OF LEGAL ACTIONS

■ Fitzgeralds' first assertion is that Corbett and Gurr breached the settlement

8. *See Zions First Nat'l Bank v. National American Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988); *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985); *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983).

9. *See Zions First Nat'l Bank*, 749 P.2d at 653; *Colonial Leasing Co. of New England, Inc. v.* *Larsen Bros. Constr. Co.*, 731 P.2d 483, 488 (Utah 1986); *Kimball*, 699 P.2d at 716; *Brown v. Board of Ed. of Morgan County School Dist.*, 560 P.2d 1129, 1131 (Utah 1977); *Craig Food Indus., Inc. v. Weihing*, 746 P.2d 279, 283 (Utah Ct.App. 1987).

agreement by failing to "settle all legal actions, lawsuits, appeals to the Supreme Court, etc., concerning Leland A. and Helen S. Fitzgerald and all their Cedar Valley property." The only legal actions existing at the time the settlement agreement was signed were two appeals on file in the Utah Supreme Court. Both of those appeals were dismissed with prejudice on November 1, 1982, pursuant to Fitzgeralds' motion to dismiss that went purposely unopposed by Corbett and Gurr.

The fact that subsequent hearings were held in February 1983, with regard to the judgment entered in the first trial does not amount to a breach of the agreement. The hearings and appeals concerned damages awarded in the judgment to defendants II, who were co-defendants in the first suit. The hearings and the subsequent second appeal involved only a tangential clarification of the previous judgment respecting Lee and Helen Fitzgerald. There was no breach of the settlement agreement arising out of the hearings held subsequent to the signing of the agreement.

## RES JUDICATA

■ Fitzgeralds also claim that the issue of whether they were to honor all of Corbett's and Gurr's past sales is barred by the doctrine of res judicata. In order for a claim to be barred by res judicata, the current claim and a prior claim must satisfy three requirements: (1) both cases must involve the same parties, their privies or assignees; (2) the claim that is asserted to be barred must have been presented or be such that it could have been presented in the first case; and (3) the first suit must have resulted in a final judgment on the merits.[10]

In the instant case, nothing in the record indicates that this claim was ever presented or adjudicated on its merits prior to the present action. Nor, by reason of timing and substance, could the claim have been raised in any of the actions previously brought. The present claim involves the "honor past sales" clause in the settlement agreement, and all previous suits where the "honor past sales" agreement was addressed did not involve the settlement agreement at issue here. The issue in the present case is not barred by the doctrine of res judicata.

## PAYMENT OF $11,000

■ Fitzgeralds' next claim is that Corbett and Gurr failed to pay the $11,000 due under the agreement and therefore breached the agreement. The record reveals, however, that Gurr proposed that the $11,000, together with accrued interest, be paid in one lump sum prior to the trial in this matter. In addition, the record reflects that Corbett and Gurr were ready, willing, and able to make full payment at the time of trial, and the trial court so found and thus concluded that there was no breach of the settlement agreement.

A mere offer to pay generally does not constitute a valid tender.[11] In order to be valid, tender of payment on a contract must be (1) timely,[12] (2) made to the person entitled to payment,[13] (3) unconditional,[14] (4) an offer to pay the amount of money due,[15] and (5) "coupled with an actual production of the money or its equivalent."[16]

An exception to the general requirements of a valid tender arises where it is plain and clear that a tender, if made, "would be an idle ceremony and of no avail."[17] In *Hansen v. Christensen*,[18] the

**10.** *Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988); *see also Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 875 (Utah 1983); *Church v. Meadow Springs Ranch Corp.,* 659 P.2d 1045, 1048 (Utah 1983).

**11.** *See* 74 Am.Jur.2d *Tender* § 7 (1974).

**12.** *Id.* at § 16.

**13.** *Johnston v. Austin,* 748 P.2d 1084, 1090 (Utah 1988).

**14.** *Zion's Properties, Inc. v. Holt,* 538 P.2d 1319, 1322 (Utah 1975).

**15.** *Id.*

**16.** *Id.*

**17.** 74 Am.Jur.2d *Tender* § 4 (1974).

**18.** 545 P.2d 1152 (Utah 1976).

purchaser and seller under an installment land contract both died, and when the administrator of the purchaser's estate attempted to bring the terms of the contract current and offered the balance due to the administrator of the seller's estate, the seller's administrator refused. Thereafter, the buyer's administrator deposited the amount due in a local bank and had the bank notify the seller's administrator that the money was available in exchange for the deed.

The trial court entered a judgment enforcing conveyance. The seller's administrator appealed, arguing that the buyer's administrator never made proper tender. In affirming the trial court, this court held: "Where the unreasonable conduct of the obligee would make an actual tender a fruitless gesture, an offer to comply with the terms of the contract by the obligor is sufficient." [19]

In the instant case, the record is clear that Gurr made offers to pay the $11,000 and accrued interest in full but that Fitzgeralds refused to accept payment. We affirm the findings of the trial court that Corbett and Gurr did not breach the contract with regard to the $11,000 payment because they stood ready, willing, and able to perform. Any failure on their part to make a "perfect" tender is excused under the "idle ceremony" exception discussed above.

### TIMELY PAYMENT OF $49,000

■ Fitzgeralds' next claim is that Corbett and Gurr breached the settlement agreement by failing to pay the $49,000 on September 10, 1982, as specified in the agreement. In fact, the $49,000 was tendered by Corbett and Gurr and accepted by Fitzgeralds on November 2, 1982. Fitzgeralds' acceptance of the late $49,000 payment constituted a waiver of any breach by reason of a late payment.[20] We find Fitzgeralds' argument that the $49,000 payment accepted by Fitzgeralds on November 2, 1982, was applicable to another underlying contract and not to the settlement agreement to be without merit.

### AMBIGUITY OF THE AGREEMENT

■ The next issue with respect to the settlement agreement is the meaning of the clause that states: "Fitzgerald's [sic] agree to honor all Corbett and Gurr's previous sales." Fitzgeralds claim that the trial court relied upon certain extrinsic evidence with regard to the intent of the parties concerning the "honor past sales" clause of the settlement agreement without first determining, as a matter of law, that the settlement agreement was ambiguous.

The trial court found that certain open court statements made by Fitzgeralds' trial counsel in the first trial indicated the intent of the parties with regard to the settlement agreement's "honor past sales" clause. Fitzgeralds' trial counsel stated:

We, Mr. and Mrs. Fitzgerald, do not want the persons who have bought from Corbett and Gurr to be hurt. And so we are suggesting to the Court that an equitable verdict on termination would be if the Court would terminate Corbett and Gurr out and enter as a part of that termination order *that Lee and Helen Fitzgerald honor all of the contracts that Corbett and Gurr have entered into with innocent bona fide purchasers of property under that contract. And they will do so and they are willing to do it for the remaining unpaid balance.* If the persons have paid it all and not got their title, he'll just give them their title for nothing. If they've paid all but the last payment, he will take the last payment and give them their title. So that no persons will be hurt as a result of the terminating of the Corbett and Gurr contract [sic]. They will all be honored if they are bona fide purchasers.

(Emphasis added.)

At first blush, it may appear that the trial court erred in considering the foregoing extrinsic evidence to ascertain the

---

19. *Id.* at 1154; *see also Romero v. Schmidt*, 15 Utah 2d 300, 301–02, 392 P.2d 37, 38 (1964).

20. *See generally John Price Assocs., Inc. v. Davis*, 588 P.2d 713 (Utah 1978); *Zion's Co-op Mercantile Inst. v. Jacobsen Constr. Co.*, 27 Utah 2d 6, 492 P.2d 135 (1971).

intent of the parties without first concluding, as a matter of law, that the agreement was ambiguous.[21] However, notwithstanding the lack of a specific finding of ambiguity, it is implicit in the record before us that the trial court viewed the settlement agreement as ambiguous. In addition, it is apparent that the parties themselves accepted as a foregone conclusion the ambiguity of the settlement agreement. This is to be seen in that although Fitzgeralds objected to the sufficiency of the evidence recited in the findings of fact, they did not object in any manner to the failure of the trial court to conclude that the settlement agreement was ambiguous.[22]

Pursuant to Fitzgeralds' objection to the findings of fact, a hearing was held on September 18, 1987, for the sole purpose of hearing arguments on objections to the findings of fact and conclusions of law. No objection was made to the omission of a conclusion of law that the "honor past sales" clause was ambiguous, nor was an objection made to the fact that extrinsic evidence was received. The only objection went to the sufficiency of the evidence. The only objection to the extrinsic evidence of counsel's open court statement was that it was too remote to be probative of the parties intent at the time the settlement agreement was signed, an argument we find to be without merit.

It is also of note that Fitzgeralds asserted in their brief that the "honor past sales" clause was indeed ambiguous. When viewed in the context of the record before us, we find Fitzgeralds' contention that the trial court erred by failing to determine as a matter of law that the "honor past sales" clause was ambiguous to be without merit.

■ While the trial court properly construed the ambiguous "honor past sales" provision in the settlement agreement *as*

between the parties to the instant litigation*, it erred insofar as it sought to adjudicate the extent of Fitzgeralds' obligations to others in view of that provision and insofar as its judgment directed Fitzgeralds to convey property to various alleged purchasers pursuant to contracts such purchasers entered into with Corbett and Gurr.

Integral to the "honor past sales" proviso as construed by the trial court was the notion that Fitzgeralds would honor "contracts that Corbett and Gurr have entered into with innocent bona fide purchasers." Those purchasers, however, were not parties in this action. Much of the evidence before the court concerning the nature of those alleged contracts can only be regarded as troubling. For example, one contract introduced by Corbett and Gurr was for the sale of 80 acres but only required the payment of $1 down and installments totaling $9. It was not signed by the putative buyer. It is doubtful that a contract for the sale of real property at 80 cents per acre represents a bona fide purchase.

In litigation between Fitzgeralds and Corbett and Gurr over the meaning and effect of a settlement agreement entered into between them, the trial court was free to definitively construe a key provision in their agreement. But having done that, the trial court should not have set about to enforce Fitzgeralds' adherence to that provision for the benefit of third parties not joined in the action before the court. Those matters should have been left for resolution in the future.

Now cognizant of their obligations under the "honor past sales" provision, Fitzgeralds should have been left to deal with the alleged purchasers appropriately. Legitimate contracts would presumably be honored, i.e., full credit given for amounts paid

---

21. *See supra* notes 8–9 and accompanying text.

22. *See O.S. Stapley Co. v. Logan,* 6 Ariz. App. 269, 431 P.2d 910 (1967) (where the trial court substantially complied with making specific findings and conclusions of law and plaintiff did not timely object or move to amend or make additional findings, plaintiff could not raise on appeal the objection that the trial court erred);

*Solar, Inc. v. Electric Smith Constr. & Equip. Co.,* 88 Nev. 457, 499 P.2d 649 (1972) (where the trial court failed to refer to the privity of contract issue in any respect in its findings of fact and conclusions of law or judgment and appellant failed to move to amend findings or judgment, such issue was not preserved for appellate consideration).

prior to the settlement agreement, with delivery of a deed upon the payment of the balance owing. Those contracts which did not represent bona fide purchases would presumably be ignored. Purchasers unhappy with their treatment by Fitzgeralds could of course seek relief in one or more actions brought by them to secure Fitzgeralds' compliance with their obligation under the settlement agreement. And under the principle of collateral estoppel, Fitzgeralds would be precluded in such actions from relitigating the nature and extent of their obligation to the contract purchasers under the "honor past sales" provision. In such actions, the purchasers' "innocence" could be examined, the "bona fide" nature of their purchase explored, and the amount actually paid toward their purchase obligations established with some precision. In sum, it was not proper to endeavor to resolve these separate matters in the context of a much narrower action pending between Fitzgeralds and Corbett and Gurr.

The judgment is vacated insofar as it purports to determine the obligations owing by Fitzgeralds to the alleged contract purchasers not parties to this action.

### DAMAGES

The final issue on appeal is whether the trial court erred in failing to award damages to Fitzgeralds for slander of title. We have duly considered this contention and conclude that the facts fully support the trial court's finding that Fitzgeralds suffered no damages resulting from the filing of the "Notice of Interest" documents.

Affirmed in part, reversed in part, and remanded for modification of judgment.

STEWART, DURHAM and ZIMMERMAN, JJ., and GREGORY K. ORME, Court of Appeals Judge, concur.

HOWE, Associate Chief Justice, having disqualified himself, does not participate herein; ORME, Court of Appeals Judge, sat.