IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Tooele Associates Limited Partnership, | ) | OPINION |
| | ) | |
| Plaintiff, Appellant, and Cross-appellee, | ) | Case No. 20100504-CA |
| | ) | |
| | ) | |
| v. | ) | F I L E D |
| | ) | (August 2, 2012) |
| Tooele City, | ) | |
| | ) | 2012 UT App 214 |
| Defendant, Appellee, and Cross-appellant. | ) | |
| | ) | |

-----

Third District, Salt Lake Department, 060919737
The Honorable Randall N. Skanchy

Attorneys:      Bruce R. Baird, Paxton R. Guymon, and Lauren Parry Johnson,
                Salt Lake City, for Appellant and Cross-appellee
                George M. Haley and Christopher R. Hogle, Salt Lake City, for
                Appellee and Cross-appellant

-----

Before Judges Voros, Orme, and Thorne.

VOROS, Associate Presiding Judge:

¶1      Tooele Associates Limited Partnership sued Tooele City over the development of a planned residential community.  The City counterclaimed.  Following a three-week trial, the jury returned a special verdict finding that the City had caused Tooele

Associates $22.5 million in damages, and Tooele Associates had caused the City $1.82 million in damages. The City moved for entry of judgment awarding damages in its favor and no damages for Tooele Associates; Tooele Associates opposed the motion and moved for entry of judgment in its favor. The trial court ruled that the jury's special verdict was irreconcilably inconsistent, struck the verdict, and declared a mistrial. Tooele Associates petitioned for interlocutory appeal and the City cross-petitioned. We granted those petitions with respect to the issues discussed below. We now reverse the trial court's post-trial ruling and remand.

BACKGROUND

¶2     Tooele Associates entered into a series of agreements with the City involving the development of a planned residential community known as Overlake. Among other things, the agreements required Tooele Associates to build certain public improvements and required the City to provide culinary water for the development. However, as the trial court stated, this "development of massive proportions" led to "disputes of a similar scale." Although the present dispute encompasses a range of alleged acts and omissions on both sides, we recount only the portion of the dispute relevant to the resolution of this appeal.

¶3     Central to this dispute are two sets of documents: a Development Agreement, which set forth the basic rights and obligations of the parties relating to the development, and several Bond Agreements, which obligated Tooele Associates to complete and to provide security for the completion of certain public improvements.[1] Tooele Associates sued the City, alleging breach of the Development Agreement and

---

[1]The Bond Agreements were not themselves security for other obligations. Rather, the Bond Agreements were agreements between Tooele Associates and the City in which Tooele Associates agreed, in the words of Jury Instruction 46, to "ensure the completion of all public improvements required to be installed in the subdivision and provide a Bond to secure the obligations contained in the Bond Agreement."

breach of the covenant of good faith and fair dealing. The City counterclaimed, alleging breach of the Development Agreement and Bond Agreements.[2]

¶4     Many of Tooele Associates' specific allegations of breach focus on public improvements it was required to build under the Development Agreement and Bond Agreements. Tooele Associates claimed that the City breached the Development Agreement and the covenant of good faith and fair dealing in several ways. These included misapplying the City's public improvement ordinances in relation to Overlake, requiring the public improvements to meet standards not clearly set forth in any agreement and not required of other similarly situated developers, creating arbitrary and incomplete punch lists of items that needed to be fixed for the public improvements to be considered complete, slowing or refusing to make final inspections of the public improvements, refusing to recognize prior admissions that certain public improvements were complete, and ultimately refusing to accept certain public improvements as complete. Tooele Associates also claimed that the City's refusal to extend the Development Agreement after the initial ten-year period constituted breach. Tooele Associates claimed that these and other alleged breaches prevented it from completing the development and realizing the financial benefit of the culinary water to be provided by the City.

¶5     The City denied the allegations of breach and argued, among other things, that Tooele Associates failed to complete the public improvements and that this failure constituted a material breach that excused the City from providing any benefits under the agreement. The City also claimed damages for incomplete public improvements. In response, Tooele Associates alleged that the City waived any claim or defense based on incomplete public improvements.

¶6     Following a three-week trial in June 2009, the jury returned a special verdict addressing thirty-three questions submitted by the court. In sum, on Tooele Associates' claims, the jury found that the City had materially breached the Development Agreement and the covenant of good faith and fair dealing in eight specific ways. On the City's affirmative defense of excuse, the jury found that Tooele Associates had materially breached the Development Agreement in two ways, but that the City had

---

[2]A number of other claims were resolved through pretrial motions, bifurcated from the June 2009 jury trial, or reserved for resolution by the trial court.

waived its claim of material breach. On the City's counterclaims, the jury found that Tooele Associates' failure to complete public improvements was a breach—without specification of materiality—of both the Development Agreement and the Bond Agreements, and that these breaches were not waived. The jury found Tooele Associates' damages to be $22.5 million and the City's damages to be $1.82 million.

¶7    After the jury returned the special verdict, the City moved for entry of judgment in its favor. Based on the jury's finding that Tooele Associates breached the Bond Agreements by not completing the public improvements, the City argued that Tooele Associates could not recover any damages because the Bond Agreements allowed the City to withhold approval for future development phases in the event of incomplete public improvements (the Bond Agreement defense). Tooele Associates opposed the City's motion and moved for entry of judgment in its favor.

¶8    Faced with competing claims that the jury verdict favored each party, the trial court carefully examined the special verdict for inconsistencies and requested supplemental briefing on the issue. Each party argued below, and argues now on appeal, that the verdict is consistent in its favor. The trial court ruled the verdict irreconcilably inconsistent.

ISSUE AND STANDARD OF REVIEW

¶9    Tooele Associates and the City each claim that the trial court erred by finding the jury verdict irreconcilably inconsistent. We review for correctness a trial court's determination of whether a special verdict is inconsistent. *See Neff v. Neff*, 2011 UT 6, ¶¶ 76, 86, 247 P.3d 380 (apparently applying a correctness standard of review); *Dishinger v. Potter*, 2001 UT App 209, ¶¶ 28–30, 47 P.3d 76 (same); *see also Norris v. Sysco Corp.*, 191 F.3d 1043, 1047 (9th Cir. 1999) ("We review a district court's determination regarding a claim that the jury's verdict is internally inconsistent de novo.").

ANALYSIS

¶10    Our duty is to reconcile special verdicts if possible. "'Where the possibility of inconsistency in jury interrogatories or special verdicts exists, [we] will not presume

inconsistency; rather, [we] will seek to reconcile the answers if possible.'" *Neff*, 2011 UT 6, ¶ 76 (alterations in original) (quoting *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1083 (Utah 1985)). "'When reviewing claims that a jury verdict is inconsistent, we must accept any reasonable view of the case that makes the jury's answers consistent.'" *Id.* ¶ 49 n.20 (quoting *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 852 (10th Cir. 2000)). "Accordingly, a jury's verdict will be sustained, even in the face of possible inconsistency, if the judgment can 'be read harmoniously.'" *Id.* ¶ 76 (quoting *Bennion*, 701 P.2d at 1083). Therefore, "the question for this court is whether it is reasonable to construe the jury's verdict with regard to these claims in a manner that gives effect to all of the jury's responses on the special verdict form." *Id.* Otherwise stated, "[g]iven the choice of two competing reasonable alternatives, we are bound to adopt the construction of the verdict that does not nullify the jury's answers." *Id.* ¶ 85.

¶11     When reconciling apparent inconsistencies on a special verdict form, "the answers to the questions are to be construed in the context of the surrounding circumstances of the case and in connection with the pleadings, instructions, and issues submitted." Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 2510 (3d ed. 2011); *see also Neff*, 2011 UT 6, ¶ 85 (noting the importance of the jury instructions in the court's attempt to reconcile responses on a special verdict form). Furthermore, we presume that the jury followed the jury instructions. *See Moore v. Burton Lumber & Hardware Co.*, 631 P.2d 865, 869 (Utah 1981); *State v. Nelson*, 2011 UT App 107, ¶ 4, 253 P.3d 1094 ("In the absence of the appearance of something persuasive to the contrary, we assume that the jurors were conscientious in performing . . . their duty, and that they followed the instructions of the court." (citation and internal quotation marks omitted)), *cert. denied*, 255 P.3d 684 (Utah 2011). Finally, if special verdicts may be reconciled, the trial court should apply the law and render a verdict consistent with the jury's findings. *See* Utah R. Civ. P. 58A(a) ("If there is a special verdict or a general verdict accompanied by answers to interrogatories returned by a jury, the court shall direct *the appropriate judgment*, which the clerk shall promptly sign and file." (emphasis added)); *Dishinger*, 2001 UT App 209, ¶ 17 ("'[I]n [the] case of a special verdict, the jury only finds the facts, and the court applies the law thereto and renders the verdict.'" (second alteration in original) (citation omitted)).

¶12    In the present case, the trial court identified two apparent inconsistencies in the special verdict.  However, we hold that the special verdict is reconcilable.  The key to reconciling the special verdict lies in the distinction between material and nonmaterial breach.

¶13    A party must show material breach to prevail on certain affirmative defenses, such as excuse.  *See McArthur v. State Farm Mut. Auto. Ins. Co.*, 2012 UT 22, ¶ 28 & n.7, 274 P.3d 981 ("It is well-settled law that one party's breach excuses further performance by the non-breaching party if the breach is material." (citation and internal quotation marks omitted)).  However, a party need not show that a breach is material to recover damages.  *See, e.g.*, *Coalville City v. Lundgren*, 930 P.2d 1206, 1209–10 (Utah Ct. App. 1997) (rejecting a claim for rescission because plaintiff's breach was nonmaterial and damages were sufficient to compensate for the breach).  When viewed in light of the jury instructions, the special verdict questions, and the structure of the special verdict form, the jury's answers can be read harmoniously.

## I.  First Apparent Inconsistency:  Tooele Associates' Breach

¶14    At first glance, the special verdict form seems to present two conflicting findings regarding breach by Tooele Associates:  both that Tooele Associates breached the Development Agreement by failing to complete public improvements, and that it did not.  However, when the distinction between material and nonmaterial breach is considered, the special verdict form may be reconciled.

¶15    The apparent conflict arises from the jury's responses to Questions 2 and 7.  Question 2 presented the City's affirmative defense of excuse by asking whether Tooele Associates materially breached the Development Agreement and then asking about various ways in which Tooele Associates may have done so:

> 2.  Has Tooele City proven by a preponderance of the evidence that Tooele Associates materially breached the Development Agreement?

The jury answered yes.  One of the subparts of Question 2 then asked the jury to specify whether the breach involved the failure to complete public improvements:

[2(a)]. By failing to complete public improvements in Overlake pursuant to Sections VII.2 and VIII.2 of the Development Agreement?

The jury answered no. In other words, the jury found that Tooele Associates materially breached the Development Agreement, but not by failing to complete public improvements.[3]

¶16    Question 7 presented the City's counterclaim, asking whether Tooele Associates breached the Development Agreement by failing to complete public improvements. The question referred to two of the same sections of the Development Agreement listed in Question 2(a):

7. Has Tooele City proven that Tooele Associates breached Sections III.G, VII.2, VIII.2, and XVII of the Development Agreement by failing to complete public improvements in Overlake?

The jury answered yes. In other words, Tooele Associates breached sections VII.2 and VIII.2 by failing to complete public improvements.[4]

¶17    The difference in wording between Questions 2 and 7 is significant. Question 2 asks about material breach while Question 7 does not use "material" as a qualifier. The significance of this wording is evident when viewed in light of the structure of the special verdict form submitted to the jury. The form is divided into two sections. Section I addresses Tooele Associates' claims and the City's affirmative defenses, and Section II addresses the City's counterclaims and Tooele Associates' affirmative

---

[3]The material breaches that the jury did find involved Tooele Associates' failure to pay the full amount owed for water used to irrigate a golf course and failure to comply with all the City's applicable ordinances, resolutions, policies, and procedures, including the requirements for subdivision plat and site plan approval.

[4]The jury also found in Question 6 that Tooele Associates breached the Bond Agreements by failing to complete public improvements.

defenses.  Question 2 appears in Section I, presenting the City's affirmative defense of excuse; Question 7 appears in Section II, presenting the City's counterclaim for damages.  As noted above, the materiality of a breach is central to the affirmative defense of excuse, but not to a claim for damages based on incomplete performance. *See McArthur*, 2012 UT 22, ¶ 28 & n.7; *Lundgren*, 930 P.2d at 1209–10.

¶18     The jury was specifically instructed on the principle of material breach.  Jury Instruction 30 stated that the jury "must decide whether there was a material breach of the Development Agreement."  It explained that a breach is material "if a party fails to perform an obligation that was important to fulfilling the purpose of the contract," and that a breach is not material "if the party's failure was minor and could be fixed without difficulty."  Jury Instruction 63 specifically applied the principle of material breach to the City's affirmative defense of excuse, reiterating the definitions of material and nonmaterial breach in the context of Tooele Associates' failure to complete the public improvements.  It stated that the affirmative defense of excuse would not be available to the City if Tooele Associates' breach was nonmaterial, but that the "City *may still be entitled to compensation for the breach*."  (Emphasis added.)  Furthermore, Jury Instruction 27 presented Tooele Associates' contention that it did not materially breach either the Development Agreement or the Bond Agreements.  In view of these instructions, we assume that the jury was attuned to the distinction between material and nonmaterial breach when it responded to Questions 2 and 7.  We read their responses accordingly.

¶19     Read thus, the jury's answers to Questions 2 and 7 are consistent.  The jury found that Tooele Associates materially breached the Development Agreement in a number of ways, but not by failing to complete public improvements.  It further found that Tooele Associates breached the Development Agreement by failing to complete public improvements, but did not find that the breach was material—that is, "important to fulfilling the purpose of the contract."  The jury's answers to these questions thus may reasonably be read in harmony.

## II. Second Apparent Inconsistency:  The City's Waiver

¶20     Next, the special verdict form seems to present two conflicting findings on waiver:  both that the City waived its claims and defenses under the Development Agreement and Bond Agreements, and that it did not.  However, when the pivotal

distinction between material and nonmaterial breach is again considered, the special verdict form is consistent on the question of waiver as well.

¶21    The apparent conflict arises from the jury's responses to Questions 3 and 8. Question 3 asked whether the City waived its claims and defenses of material breach under the Development Agreement "and/or" Bond Agreements:

> 3.  Has Tooele Associates proven that Tooele City waived its claims and its defenses, as stated in Question 2, that Tooele Associates materially breached the Development Agreement and/or Bond Agreements?

The jury answered yes.  In other words, notwithstanding the material breaches identified in Question 2, the City waived its claims and defenses based on Tooele Associates' material breach of the Development Agreement, the Bond Agreements, or both.

¶22    Question 8 asked, more pointedly, whether the City waived its public-improvements-based counterclaims under the Development Agreement and the Bond Agreements:

> 8.  Has Tooele Associates proven that Tooele City waived its rights to claim that Tooele Associates did not complete public improvements in Overlake required by the Development Agreement and the Bond Agreements?

The jury answered no.  In other words, while the City waived other claims, it did not waive its claim that Tooele Associates breached the Development Agreement and the Bond Agreements by failing to complete public improvements.

¶23    As with Questions 2 and 7, the difference in wording between Questions 3 and 8 is telling.  Question 3 asks about material breach, while Question 8 does not; rather, Question 8 asks whether the City "waived its rights to claim that Tooele Associates did not complete public improvements."  Again, this difference in wording is relevant in light of the structure of the special verdict form.  Section I addresses Tooele Associates' claims and the City's affirmative defenses.  Question 2, discussed above, asks whether

Tooele Associates materially breached the Development Agreement (yes). Question 3 asks whether the City waived its affirmative defenses based on material breach (yes). Material breach is thus relevant in this context. *See supra* ¶¶ 17–18.

¶24    Question 8 appears in Section II, which addresses the City's counterclaims and Tooele Associates' affirmative defenses. Questions 6 and 7 address the City's counterclaims of incomplete performance. Question 8 then asks whether the City waived its counterclaims (no). Material breach is not mentioned. Having been instructed on the principle of materiality and its relation to the parties' affirmative defenses and counterclaims, the jury presumably answered the special verdict questions with these distinctions in mind. *See supra* ¶ 18.

¶25    Thus, Question 3 addresses the City's waiver of affirmative defenses based on material breach, while Question 8 addresses the City's waiver of counterclaims to recover damages for incomplete public improvements. Accordingly, the jury found that the City waived its affirmative defenses based on material breach of both the Development Agreement and the Bond Agreements, but not its counterclaim that Tooele Associates failed to complete public improvements. In other words, with respect to Tooele Associates' failure to complete public improvements, the City is entitled to claim breach, but not material breach; the City can recover damages for Tooele Associates' incomplete performance, but its own performance is not excused. Thus the jury's responses on the issue of waiver may reasonably be reconciled as well.[5]

---

[5]We are not persuaded that the finding of waiver in Question 3 must be limited to the Development Agreement. In its reading of Question 3, the City emphasizes the use of "and/or" and the phrase "as stated in Question 2." Question 2 lists specific allegations of breach of the Development Agreement, citing provisions of the agreement for each allegation, and does not mention the Bond Agreements.

"Given the choice of two competing reasonable alternatives, we are bound to adopt the construction of the verdict that does not nullify the jury's answers." *Neff v. Neff*, 2011 UT 6, ¶ 85, 247 P.3d 380. We agree with Tooele Associates that the phrase "as stated in Question 2" may reasonably be read as a descriptive reference to the specific factual allegations in Question 2 rather than a restrictive reference to specific Development Agreement provisions. For example, one factual allegation listed in Question 2—"fail[ure] to complete public improvements"—was grounded in an

(continued...)

### III. The City's Bond Agreement Defense

¶26 The City argues that judgment should be entered in its favor because its Bond Agreement defense based on *nonmaterial* breach survives, and that defense as a matter of law forecloses all of Tooele Associates' claims. The City contends that before trial the court ruled that, so long as the City could show that Tooele Associates' performance deviated in any degree from the requirements of the Bond Agreements, the City could withhold approval of all future phases of development and Tooele Associates could

---

[5](...continued)
obligation common to both the Development Agreement and the Bond Agreements. And Jury Instruction 27 presented the City's claim that failure to complete public improvements was a violation of both agreements. Thus, read in context, Question 3 asked the jury to decide the issue of waiver under not only the Development Agreement, but also the Bond Agreements.

The jury understood this. The special verdict form effectively instructed the jury after it addressed waiver in Question 3 that the survival of an affirmative defense obviated the need to assess damages. Yet the jury assessed damages before moving on to the City's counterclaims, thus indicating that the City's affirmative defenses based on material breach were waived, including those based on the Bond Agreements.

That said, we join those courts that "rue the use of the phrase 'and/or' by lawyers and judges." *Lazcar Intern., Inc. v. Caraballo*, 957 So. 2d 1191, 1193 (Fla. Dist. Ct. App. 2007); *see also Putnam v. Industrial Comm'n*, 80 Utah 187, 14 P.2d 973, 982–84 (1932) (condemning the use of "that barbarism 'and/or'" and setting aside a decision that was rendered "too uncertain to [be] give[n] effect" by use of the term (citation and internal quotation marks omitted)); *Heath v. Westark Poultry Processing Corp.*, 531 S.W.2d 953, 955 (Ark. 1976) ("The phrase 'and/or' has brought more confusion than clarity to the task of construction of statutes, contracts and pleadings."); *Holmes v. Gross*, 93 N.W.2d 714, 722 (Iowa 1958) (holding inadvisable the use of "that mongrel expression" in jury instructions, noting that it is "an equivocal connective, being neither positively conjunctive nor positively disjunctive" (citation and internal quotation marks omitted)); *State v. Smith*, 184 P.2d 301, 303 (N.M. 1947) (labeling "the highly objectionable phrase 'and/or'" a "linguistic abomination," "which has no place in pleadings, findings of fact, conclusions of law, judgments or decrees, and least of all in instructions to a jury.").

recover nothing.[6]  The City explains that because Tooele Associates' damages theory focuses on the City's obligation to provide culinary water for the Overlake development, "all of [Tooele Associates'] alleged damages depended upon the ability to develop additional lots in future phases."  Because the City is authorized to withhold phase approval, the City reasons, Tooele Associates' theory of damages fails.  We do not agree.

¶27    As we interpret the City's argument, the City claims it is excused from performing its obligations by Tooele Associates' nonmaterial breach of the Bond Agreements.[7]  Under the Development Agreement, the City is obligated "to provide the culinary water required to meet the needs of the Overlake Development Plan at build-out."  An implicit condition precedent to this obligation is Tooele Associates' completion of the development project.  Yet each phase of development requires approval by the City.  Under the Bond Agreements, the City's approval is conditioned on Tooele Associates' completion of the public improvements:  "In the event of a Failure to Perform by [Tooele Associates], no further permits or business licenses shall be issued . . . ."  The Bond Agreements define "Failure to Perform" as "the non-performance in a timely manner . . . of any obligation, in whole or in part."  The City thus argues, in essence, that its obligation to provide culinary water for the Overlake development is excused by Tooele Associates' noncompletion, in any degree, of the public improvements.  Furthermore, the City claims that its Bond Agreement defense is beyond challenge because it is law of the case under a pretrial ruling on summary judgment.  Now that the jury has found at least a nonmaterial breach, according to the City all that remains is for the trial court to enter judgment of no liability in favor of the City.

---

[6]Tooele Associates does not contest that its performance did in fact deviate from the requirements of the Bond Agreements.  The City's argument would thus render the effort to reconcile the apparent inconsistencies in the special verdict form—and a large share of the three-week trial—irrelevant.

[7]Although the jury did not decide whether Tooele Associates' failure to complete public improvements constituted a material breach of the Bond Agreements, we refer to the failure as a nonmaterial breach for the sake of this discussion because we have already concluded that the jury found the City waived defenses based on material breach.  *See supra* ¶ 25 & n.5.

¶28    First, we do not agree that the trial court's earlier summary judgment ruling established the City's Bond Agreement defense as law of the case—at least not as the City has argued that principle after trial and on appeal. The trial court did rule that "the Bond Agreements do, indeed, vest authority in the City to deny further phases based upon incomplete public improvements." But the court's ruling speaks only to the City's general Bond Agreement authority to deny approval of future phases. Although the City argued on summary judgment that this authority extended to nonmaterial breaches, the court did not decide the issue. The court stated in its denial of partial summary judgment that a genuine issue of material fact existed as to whether the City had "waived its rights to deny further phases." In fact, the pretrial order expressly identified what the City now describes as law of the case as merely the City's contested position: "The City disputes the notion that substantial performance, rather than complete performance, is sufficient to avoid the consequences of [Tooele Associates'] 'Failure to Perform' under the Bond Agreements . . . ." Thus, far from being resolved pretrial, the scope of the City's authority under the Bond Agreements was designated as a contested issue for trial.[8]

¶29    The City never clearly presented this defense to the jury. Jury Instruction 57 did list as one of the City's defenses that "Tooele Associates' claim fails due to the non-occurrence of a condition to Tooele City's performance: Tooele Associates' own performance of the Development Agreement." And Jury Instructions 33 and 63 discuss when the defense of excuse is available. Yet the City never requested a jury instruction that a *nonmaterial* breach by Tooele Associates barred any award of damages against the City. But even if it had, as we read the jury verdict, the City's defense cannot succeed. The jury found that, due to the City's waiver, the City's performance was not excused even by Tooele Associates' material breach of the Bond Agreements; this finding logically forecloses the City's argument that Tooele Associates' nonmaterial breach would excuse the City's performance.

---

[8]Even if the City's defense were law of the case, that status would not automatically place the issue beyond challenge. *See Mid-America Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶¶ 11–14, 216 P.3d 352 ("Law of the case does not prohibit a district court judge from revisiting a previously decided issue during the course of a case . . . . Rather, the doctrine *allows* a court to decline to revisit issues within the same case once the court has ruled on them." (citation and internal quotation marks omitted)).

¶30    Furthermore, the City's Bond Agreement defense fails as a matter of law in light of the special verdict finding that the City breached the Development Agreement's covenant of good faith and fair dealing. "An implied covenant of good faith and fair dealing inheres in every contract." *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193. The covenant "infer[s] as a term of every contract a duty to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute." *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 8, 266 P.3d 814. Although the scope of the covenant is limited, it encompasses "an implied duty that contracting parties refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract." *Id.* ¶¶ 9, 16 (citations and internal quotation marks omitted). Thus, the covenant "'prevent[s] either party from impeding the other's performance of his obligations [under the contract].'" *Markham v. Bradley*, 2007 UT App 379, ¶ 18, 173 P.3d 865 (second alteration in original) (quoting *Zion's Props., Inc. v. Holt*, 538 P.2d 1319, 1321 (Utah 1975)); *see also* Restatement (Second) of Contracts § 205 cmt. d (1981) (noting that bad faith may be established by "interference with or failure to cooperate in the other party's performance").

¶31    When one party wrongfully hinders or prevents the occurrence of a condition precedent to its performance—such as the performance of the other party—it may not rely on the nonoccurrence of that condition to avoid performing. *See Baxter v. Saunders Outdoor Adver., Inc.*, 2007 UT App 340, ¶¶ 14–15, 171 P.3d 469 ("[N]o one can avail himself of the non-performance of a condition precedent, who has himself occasioned its non-performance." (citations and internal quotation marks omitted)); *see also Cannon v. Stevens Sch. of Bus., Inc.*, 560 P.2d 1383, 1385 (Utah 1977) ("[I]t is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of that failure." (citation and internal quotation marks omitted)). Thus, "'[o]ne party to a contract cannot by willful act or omission make it impossible or difficult for the other to perform and then invoke the other's non-performance as a defense.'" *Baxter*, 2007 UT App 340, ¶ 15 (quoting *Ferris v. Jennings*, 595 P.2d 857, 859 (Utah 1979)); *see also Markham*, 2007 UT App 379, ¶ 18.

¶32    The jury was expressly instructed on this principle in Jury Instruction 33:

> Tooele City cannot by a willful act or omission make it
> difficult or impossible for Tooele Associates to perform
> under the terms of the Development Agreement or the Bond
> Agreements and then be excused from performing their
> obligation because the other party did not perform.
>
> . . . .

The jury found that the City did make it difficult for Tooele Associates to complete the public improvements.  The City did so, in the words of the special verdicts, "[b]y slowing or refusing to give final inspections of the public improvements," "[b]y misinterpreting and misapplying its own public improvement ordinances in relation to the Overlake Project Area's subdivisions," and "[b]y refusing to recognize and accept its own admissions that public improvements within the Overlake Project Area's subdivisions were complete."  Thus, the jury found that the City was at least partially responsible for Tooele Associates' failure to complete the public improvements.  These jury findings establish that the City breached the Development Agreement and its covenant of good faith and fair dealing, again in the words of the special verdicts, by "refusing to approve, and threatening refusal of, applications for the creation of new subdivisions within the Overlake Project Area."  In other words, the jury found that, in spite of the Bond Agreement authority, the City's hindrance of Tooele Associates and refusal to approve further phases constituted breach of the covenant of good faith and fair dealing, permitting Tooele Associates to assert its claim for damages.[9]

¶33    The special verdict form makes clear that the City did impede Tooele Associates' performance and therefore it may not claim that its own performance is excused due to Tooele Associates' failure to completely perform.  Thus, the City may not rely on the Bond Agreement authority to withhold phase approval to escape its obligation to provide culinary water for the Overlake development.  The special verdict form also establishes that because Tooele Associates bore partial responsibility for its failure to

---

[9]In light of the several specific findings of hindrance, we reject the City's argument that it did not interfere with Tooele Associates' completion of the public improvements.

perform, it is not excused from its obligation to perform.  Thus, Tooele Associates may not escape its obligation to complete the public improvements.  In other words, the jury found that, notwithstanding the City's authority under the Bond Agreements, both parties are responsible for the incomplete public improvements, neither party may avail itself of the defense of excuse, and both parties are liable for the damages they caused.[10]

CONCLUSION

¶34    We conclude that the findings on the special verdict form may reasonably be read as consistent.[11]  The City materially breached the Development Agreement, including its covenant of good faith and fair dealing, in part by hindering Tooele Associates' completion of the public improvements and withholding approval of additional phases.  Tooele Associates also materially breached the Development Agreement.  However, Tooele Associates' failure to complete public improvements, though a breach of the Development Agreement, was not material.  Failure to complete the public improvements also constituted a breach of the Bond Agreements, although the jury did not determine whether that breach was material.  Regardless, the City waived its affirmative defense of excuse under both the Development Agreement and the Bond Agreements.  However, the City did not waive its counterclaim for damages based on the incomplete public improvements under either agreement.

---

[10]The City briefly argues that we should affirm on alternative grounds because, it alleges, the damages were excessive and other special verdict findings were unsupported by evidence or contrary to law.  The trial court did not address these arguments in the order from which the parties take their interlocutory appeal.  "While we possess the authority to affirm on alternative grounds, 'we are not obligated to exercise this authority,'" *Olsen v. Chase*, 2011 UT App 181, ¶ 19, 270 P.3d 538 (quoting *O'Connor v. Burningham*, 2007 UT 58, ¶ 23, 165 P.3d 1214), *cert. denied*, 262 P.3d 1187 (Utah 2011), and we decline to do so here.

[11]Despite the lack of clarity in the special verdict form that has occasioned this appeal, the jury's work in this case was exemplary.  The jury completed a legally complex special verdict form with a nuanced understanding of the legal principles spelled out in the court's instructions.

¶35    In light of the jury's findings of waiver and hindrance, the City's Bond Agreement defense fails.  Because the City breached the covenant of good faith and fair dealing by hindering Tooele Associates' completion of the public improvements, the City may not rely on Tooele Associates' failure to complete the public improvements to excuse the City's obligation to provide culinary water.  Because Tooele Associates was also responsible for its failure to complete the public improvements, Tooele Associates may not rely on the City's hindrance to excuse its obligation to complete the public improvements.  In short, when the law is appropriately applied to the reconciled special verdict, Tooele Associates recovers for the City's breach of the Development Agreement, and the City recovers for Tooele Associates' breach of both agreements.

¶36    We reverse the trial court's post-trial ruling and remand for entry of judgment in accordance with the jury's verdict and for any further proceedings as appropriate.

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

-----

¶37    WE CONCUR:

_____
Gregory K. Orme, Judge

_____
William A. Thorne Jr., Judge

20100504-CA                    17