**COVE VIEW EXCAVATING AND CONSTRUCTION CO., Plaintiff and Respondent,**

v.

**D. Thomas FLYNN and D. Thomas Flynn Construction, Inc., Defendants and Appellants.**

No. 870180–CA.

Court of Appeals of Utah.

July 28, 1988.

John Burton Anderson, Kevin Olsen (argued), Salt Lake City, for defendants and appellants.

Marcus Taylor, Richfield, for plaintiff and respondent.

Before BENCH, JACKSON and BILLINGS, JJ.

## OPINION

JACKSON, Judge:

D. Thomas Flynn Construction, Inc. and D. Thomas Flynn ("Flynn") appeal from the $1,517.50 circuit court judgment entered against them pursuant to an oral agreement for the purchase of construction materials and the rental of a pump and a backhoe. We reverse the judgment and remand the case to the trial court for entry of judgment in appellants' favor.

In the spring of 1984, Flynn talked to Charles Wayne Grundy ("Grundy"), president of respondent Cove View Excavating and Construction Company ("Cove View"), about a few days' use of Grundy's large backhoe. Flynn needed the equipment to complete excavation work he was performing on a highway project. The agreed rental charge was $125 per hour, but no specif-

ic number of hours was set. With Grundy as its operator, the backhoe was put to work on the job site from May 7 through May 15. A large pump Flynn eventually needed because of unexpected water problems on the job was also rented from Grundy at an orally agreed-upon $35 daily charge, with no specific number of days set.

On May 25, Grundy sent an invoice to Flynn for $5,922.50, including 41.5 hours for backhoe rental on May 7, 8, 9, 10 and 15, seventeen days of pump rental from May 8 through May 25, and $140 for purchased construction materials. Flynn disagreed with the number of hours billed for the backhoe and the number of days billed for the pump, which was removed from the job site on June 14. According to his time records, he only owed Grundy a total of $4,060 for materials, pump rental, and backhoe rental through June 26. On that day, he sent to Cove View a check for $5,000 with the following handwritten notation on the front of the check: "pmt in full to date labor & materials." In addition, the back of the check contained a handwritten restriction: "payment in full for all labor and materials to 6/26/84."

On June 27, before receiving the check, Grundy sent a second invoice to Flynn that included the overdue May invoice amount plus twenty more days of pump rental (from May 26 through June 14) and pump repair costs, for a total of $6,724.56. No additional hours were billed for backhoe rental. On the advice of counsel, Grundy crossed out the restrictive language on the back of the check and negotiated it. He thereafter billed Flynn for the unpaid $1,724.56 balance and eventually filed this suit.

At the bench trial, Flynn produced his daily records showing fewer hours of usage than claimed by Grundy in his billings. Flynn asserted they had agreed he would be charged only for the time the backhoe was actually *in use*, as opposed to *on the job*. He also claimed the rental of the pump was only for the days of actual use, i.e., through May 25, not all the days he had it in his possession. Grundy contra-

dicted this and testified his billings were compiled from his memory and from the daily journals in which he recorded how many hours the backhoe was on the job. According to him, they had agreed Flynn was to be billed for the number of days he had the pump. The trial court resolved these disputed factual matters in favor of Cove View, disallowing only the pump repair costs and three days of pump rental charges when the pump was broken.

In support of their motion for summary judgment at the close of respondent's evidence, later denied, appellants had argued they were entitled to judgment as a matter of law because, under *Marton Remodeling v. Jensen*, 706 P.2d 607 (Utah 1985), the parties had reached an accord and satisfaction of Cove View's claim. An accord and satisfaction arises when the parties to a contract agree that a different performance, offered in substitution of the originally agreed-upon performance, will discharge the obligation created under the original agreement. *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985); *Brimley v. Gasser*, 754 P.2d 97, 98 (Utah App.1988). The elements essential to contracts generally must be present in an accord and satisfaction, including an offer and acceptance and a meeting of the minds. *Spor v. Crested Butte Silver Mining, Inc.*, 740 P.2d 1304, 1308 (Utah 1987). The burden of proving every necessary element is on the party claiming an accord and satisfaction. *Bench v. Bechtel Civil & Minerals, Inc.*, 758 P.2d 460, 461 (Utah App. 1988).

As the court pointed out in *Marton Remodeling*, there is not an automatic accord and satisfaction every time a creditor cashes a debtor's check bearing a "paid in full" notation or some equivalent language. *Marton Remodeling*, 706 P.2d at 609 (citing *Smoot v. Checketts*, 41 Utah 211, 125 P. 412 (1912)). There must also be an unliquidated claim or a bona fide dispute over the liquidated amount due the creditor. *Id.* In such cases, there is sufficient consideration to support the accord and satisfaction because the person's tender of the check on condition that it be accepted

as full payment constitutes a surrender of the right to dispute the initial obligation. *See Sugarhouse Fin. Co. v. Anderson,* 610 P.2d 1369, 1372 (Utah 1980).[1] Because there must be an unliquidated or disputed claim, it follows that the obligor's tendered payment cannot be given merely as a "progress payment" on an indivisible contract for a liquidated amount, as in *Allen–Howe Specialties v. U.S. Constr., Inc.,* 611 P.2d 705 (Utah 1980). *See Marton Remodeling,* 706 P.2d at 609.

In his oral ruling from the bench after appellants had put on their case, the trial judge gave two reasons for rejecting Flynn's defense that an accord and satisfaction of the disputed rental charges had taken place when Grundy cashed the June 26 check. First, the court expressed its view that it was not "fair" or "proper" for Flynn to raise a dispute regarding the hours billed by merely sending the check with restrictive language the court concluded had "no effect." Second, the trial court characterized the June 26 check as payment on an "ongoing account" because Flynn still had the pump after the first billing was sent.

Respondent's counsel subsequently drafted the sparse written findings and conclusions in which neither of these two reasons is mentioned. Instead, the conclusion was that no accord and satisfaction had been reached solely because, despite the restrictive language on the check, Grundy had intended to accept the check as partial payment of the first invoice, not as full payment of Flynn's entire bill.

■ Under the standard of review set forth in Utah R.Civ.P. 52(a), a finding of fact is clearly erroneous if it is without adequate evidentiary foundation or if it is induced by an erroneous view of the law. *State v. Walker,* 743 P.2d 191, 193 (Utah 1987). We will not set aside the trial court's findings unless they are against the clear weight of the evidence or we otherwise reach a definite and firm conviction

that a mistake has been made. *Western Kane County Special Serv. Distr. No. 1 v. Jackson Cattle Co.,* 744 P.2d 1376, 1377 (Utah 1987). Conclusions of law, however, are simply reviewed on appeal for correctness without any deference to the trial court. *Id.* at 1378.

On appeal, appellants assert: (1) the evidence does not support the findings that the claim at issue here was undisputed and that Flynn's payment was on an ongoing account; and (2) the trial court erroneously interpreted and applied the law of accord and satisfaction. They contend the limitation on the check was itself a clear indication of dispute and an offer of full payment of Flynn's account through June 26—for less than the amount Grundy claimed was due through that date—which Grundy accepted by cashing the check, notwithstanding his actual intent. We agree.

The trial court apparently determined this was not a disputed claim because there were no discussions or correspondence to that effect between the parties prior to or contemporaneous with the check itself. However, there is no legal support for the proposition that restrictive language on the tendered check is alone insufficient to create the dispute required for an accord and satisfaction. In *Hintze v. Seaich,* 20 Utah 2d 275, 437 P.2d 202, 207 (1968), the Utah Supreme Court suggested that restrictive wording accompanying a tender of full payment could be a sufficient expression of the debtor's intention that it only be accepted as full payment of the pending claim.

■ The restrictive language is merely one evidentiary fact to be considered with other evidence, if any, in making the factual determination of whether the creditor knew or should have known that the payment was tendered as full satisfaction of an identified obligation of the debtor. 6 A. Corbin, *Corbin on Contracts* § 1277 (1962). *See Rivervalley Co. v. Deposit Guaranty Nat'l Bank,* 331 F.Supp. 698, 708–09 (N.D.Miss.1971) (applying Mississip-

---

1. Where, however, the underlying claim is liquidated and certain as to amount, separate consideration must be found to support the accord; otherwise, the obligor binds himself

to do nothing he was not already obligated to do, and the obligee's promise to accept a substitute performance is unenforceable. *Sugarhouse Fin. Co.,* 610 P.2d at 1372.

pi law). *See generally* Annotation, *Accord and Satisfaction—Check Acceptance,* 42 A.L.R.4th 12 (1985).

█ Despite the fact that Flynn had not yet received Cove View's second invoice when he sent the check, the language on the front and back is a clear and definite offer to settle his entire account through June 26 for less than Cove View was claiming as due through that date. This open-ended, oral equipment rental agreement for unspecified total time periods was—by its very nature—likely to lead to differing tallies of the hours and days to be billed. Flynn did not have possession of Cove View's equipment after June 15. The June 26 check was for almost $1,000 less than what Cove View claimed on its first invoice. Grundy did not contend he misunderstood Flynn's intent in sending the check or the meaning of the limiting words. Indeed, during pretrial discovery he admitted that "Defendants attempted to present said check to satisfy in full the claims of Plaintiff...." Grundy did not just take the check and deposit it without concern for the notations on it. He waited and sought the advice of his attorney, who told him to cross out the restrictive endorsement and negotiate the check. Grundy knew or reasonably should have known—from the nature of the rental agreement itself and from the language on the check—that Flynn disputed Cove View's computation of the total number of hours of equipment rental and was making an offer of accord and satisfaction. The trial court's finding to the contrary is clearly erroneous.

In light of the express condition on the check, the fact that Grundy did not subjectively intend to accept the check as full payment of Flynn's obligation is legally irrelevant. A creditor may not disregard the condition attached to a check tendered in full payment of an unliquidated or disputed claim. *Marton Remodeling,* 706 P.2d at 609.[2] Grundy's options were to accept the check on Flynn's terms or return it. *See id.* at 610. *See also Air Van Lines, Inc. v. Buster,* 673 P.2d 774, 778 (Alaska 1983); *Graffam v. Geronda,* 304 A.2d 76, 80 (Me.1973). His negotiation of Flynn's check was an acceptance of Flynn's offer of full payment, notwithstanding his lack of any actual intent to accept it as such.

> The fact that the creditor scratches out the words "in full payment," or other similar words indicating that the payment is tendered in full satisfaction, does not prevent his retention of the money from operating as an assent to the discharge.... It may, indeed, be clear that he does not in fact assent to the offer made by the debtor, so that there is no actual "meeting of the minds." But this is merely another illustration of the fact that the making of a contract frequently does not require such an actual meeting.

6 A. Corbin, *Corbin on Contracts* § 1279 (1962) (quoted with approval in *Marton Remodeling,* 706 P.2d at 609). *See Spor,* 740 P.2d at 1308 (acceptance of an offer to rescind a contract may be inferred from a party's conduct). The trial court thus incorrectly concluded that respondent could cross out and thereby vitiate the restrictions on Flynn's check.

In explaining from the bench his ruling that there was no accord and satisfaction, the trial judge stated this was an "ongoing account," the significance of which is not set forth. For reasons that are not apparent in the record, this finding does not reappear in the written findings of fact and conclusions of law. It could be construed as another way of saying, as the written findings and conclusions suggest, that Grundy accepted the check only with the actual intent to apply it as partial payment of Flynn's bill. However, Grundy's negotiation of this check resulted in an accord and satisfaction as a matter of law regardless of his subjective intent.

---

**2.** *See Pino v. Lopez,* 361 So.2d 192 (Fla.App. 1978) (accord and satisfaction found where creditor accepted check with notation "Full and final payment for all goods, services and claims to date"), *cert. dismissed,* 365 So.2d 714 (Fla. 1978); *Young v. Proctor,* 119 Ga.App. 165, 166 S.E.2d 428 (1969) (restrictive endorsement for "all bookkeeping & accounting services to date"); *Graffam v. Geronda,* 304 A.2d 76 (Me. 1973) ("Full and final payment for product received December 18, 1969").

On the other hand, a careful reading of the trial transcript (particularly the legal arguments of respondent's counsel) strongly suggests that, by finding an ongoing account, the court was equating Flynn's check with the "progress payment" in *Allen–Howe Specialties*, 611 P.2d at 710. As such, it is clearly erroneous.

In *Allen–Howe Specialties*, the parties entered into an indivisible written construction contract for a liquidated amount, i.e., $53,372. In accordance with its terms, the defendant made regular partial payments to the plaintiff as work progressed. Restrictive language on the back of each check stated its endorsement acknowledged payment in full for all labor, equipment and materials furnished to date by the payee. Plaintiff refused the tender of the last payment under the contract and filed suit to recover sums, in addition to those in the written contract, for extra work performed. The court rejected defendant's argument that negotiation of the progress payment checks constituted an accord and satisfaction of all claims for extra work incurred during the time periods for which the accepted progress payments were made. *Id.* at 710–11.

In marked contrast, the contract between Flynn and Cove View was not for a fixed sum. It was for an undetermined number of hours and days of rental that were undisputedly over when Flynn sent his check; the parties simply disagreed over the total amount to be paid. Unlike the plaintiff in *Allen–Howe Specialties*, Grundy did not reject the tender of final and full payment under the contract. Instead, he accepted a check with an express condition that it was offered as "payment in full for all labor and materials to 6/26/84," resulting in an accord and satisfaction of all Cove View's claims through that date.

The judgment of the trial court is reversed and the case is remanded for entry of judgment in appellants' favor. Costs to appellants.

BILLINGS and BENCH, JJ., concur.