2000 Utah Ct. App. 121

**David PUGH, Plaintiff and Appellee,**

v.

**NORTH AMERICAN WARRANTY SERVICES, INC., Defendant and Appellant.**

**No. 981712–CA.**

Court of Appeals of Utah.

May 4, 2000.

Robert W. Hughes, Salt Lake City, and Mark P. Cohen, Oak Brook, Illinois, for Appellant.

Kendall S. Peterson, Peterson, Reed, LLC, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., ORME, and WILKINS, JJ.[1]

## OPINION

ORME, Judge:

¶1 Defendant North American Warranty Services, Inc. appeals the trial court's judgment awarding plaintiff David Pugh damages and attorney fees for North American's breach of its vehicle service contract with Pugh. We affirm and remand so that Pugh may additionally recover attorney fees incurred on appeal.

## BACKGROUND

¶2 Plaintiff Pugh purchased a used 1990 Ford Thunderbird automobile on November 16, 1995. At the same time, Pugh purchased a Vehicle Service Contract from North American. This contract covered any breakdown for two years or 24,000 miles, whichever came first. Under the terms of the contract, North American agreed to fix each breakdown that should occur during the warranty period by "provid[ing] such repair or replacement (plus labor) [it]self, or reimburs[ing] an authorized repair facility to do so."

¶3 On May 26, 1997, with only five miles remaining on the service contract, Pugh experienced transmission trouble on the road between St. George and Cedar City.[2] Pugh's Thunderbird was towed to Parkway Motors in Cedar City. Parkway inspected the vehicle's transmission pan and discovered metal shavings or filings, discolored transmission fluid that smelled burnt, and evidence that transmission fluid had leaked out of the rear housing seal.

¶4 Pugh immediately reported the breakdown to North American, which sent its agent to inspect the vehicle. Parkway's mechanics informed the agent of the metal flecks found in the transmission pan, the burnt fluid, and the leaks in the rear housing seal.

¶5 The agent, pursuant to instructions given to him by North American, instructed Parkway's mechanics to reinstall the transmission pan so that he could test drive the vehicle. After driving the vehicle for 11 miles, the agent noted only that the transmission shifted roughly into overdrive. In his report to North American, he indicated that the cause of the car's failure was "[o]il leaked from trans seal." Based on the agent's investigation and report, North American authorized only the replacement of the rear transmission seal.

¶6 Pugh, through his attorney, wrote to North American on June 11, 1997, informing it that both he and Parkway's mechanics felt that the repairs authorized by North American were inadequate and that the entire transmission needed to be repaired or replaced. In spite of this, North American continued to refuse to authorize any further repairs, during which time Pugh's vehicle remained at Parkway's garage.

¶7 On November 24, 1997, the parties entered into an "Interim Agreement," in which they agreed to share the cost of tearing down and inspecting the transmission. North American further agreed to pay all inspection and repair costs if it was deter-

---

1. Justice Wilkins heard the arguments in this case and participated in its resolution prior to his swearing-in as a member of the Utah Supreme Court.

2. As aptly noted by Pugh's counsel, this occurrence is in direct contradiction to that portion of Murphy's Law which recognizes that major vehicle breakdowns occur right after—not right before—the warranty runs out.

mined that the transmission was in need of repair.

¶ 8 Two days later, Parkway's mechanics tore down the transmission, and the agent, again sent by North American to inspect the vehicle, concluded that the transmission was, indeed, in need of substantial repairs. On January 15, 1998, North American gave Parkway authorization to repair Pugh's transmission, but only on the condition that Pugh pay for the repairs himself, after which North American would reimburse him. This procedure was directly contrary to that outlined in the Vehicle Service Contract, requiring North American to do the repairs itself or directly pay a third-party repair facility, such as Parkway. Pugh refused to pay for the repair costs out of his own pocket, and the parties remained deadlocked. Meanwhile, Pugh's Thunderbird remained in something of a vehicle purgatory in Parkway's garage.

¶ 9 On April 22, 1998, nearly a year after the transmission failure first occurred, North American finally agreed to pay Parkway for the repair costs. North American sent a check to Parkway, but withheld one-half of the tear down costs ($165.00) and $60.00 for a freight charge for a part needed for the repair. These deductions violated the parties' 1997 "Interim Agreement," in which North American had agreed to pay all of the tear down and repair costs if it were shown that the transmission itself needed repairs. During this entire ordeal, Pugh continued to make payments on the vehicle.

¶ 10 Pugh filed this action for breach of the service contract soon after North American first denied his demand to have the transmission repaired in 1997. After a bench trial some months later, the court determined that North American had breached its service contract with Pugh and awarded him $225.00 in repair costs;[3] $185.00 in towing and emergency travel costs, minus any such amounts already paid by North American; $6,750.00 for Pugh's loss of the vehicle's use; and

$6,739.75 in attorney fees and costs. North American appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 11 Initially, North American challenges several of the trial court's Findings of Fact supporting its award of damages to Pugh for loss of the use of his vehicle. However, North American has failed to provide us with a transcript of the proceedings below. As a result, we are unable to review the evidence presented and thus cannot determine whether the trial court's challenged findings were based on sufficient evidence. *See Horton v. Gem State Mut.,* 794 P.2d 847, 849 (Utah Ct.App.1990). Appellant bears the burden of "providing us with an adequate record to preserve its arguments for review." *Id.* Absent such a record, we will " 'presume that the judgment was supported by sufficient evidence.' " *Id.* (quoting *State v. Nine Thousand One Hundred Ninety–Nine Dollars,* 791 P.2d 213, 217 (Utah Ct.App.1990)).

■ ¶ 12 Although the parties submitted a set of stipulated facts to the trial court, which is in the record, the court also heard Pugh's testimony, heard opening and closing arguments by counsel, and held discussions with counsel. In fact, the court stated, with our emphasis, that it based its Findings of Fact and Conclusions of Law on "the stipulated facts, and also on the *evidence at trial,* the applicable law, and the *arguments of counsel.*" While there are admittedly some gaps between the stipulated facts and the facts found by the trial court, we have no choice but to assume they were filled by Pugh's testimony, documentary evidence received during his testimony, or concessions made by North American.

¶ 13 The only two remaining issues concern North American's contention that awarding attorney fees to Pugh was improper. First, North American argues the trial court incorrectly classified the Vehicle Service Contract between North American and Pugh as an insurance contract. We review a trial court's interpretation of an unambiguous

---

**3.** By the time of the trial, North American had already paid $2,467.47 in repair costs on the Thunderbird. The remaining $225.00 that the court ordered North American to pay was the amount the company had wrongfully withheld from the initial payment, including half of the tear down cost and the $60.00 freight charge.

contract under the correctness standard, giving no particular deference to the trial court's ruling. *See LMV Leasing, Inc. v. Conlin,* 805 P.2d 189, 192 (Utah Ct.App. 1991). Second, North American argues the award of attorney fees was improper because the court failed to make the necessary finding that it had breached the implied duty to perform in good faith. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.,* 1999 UT App 87, ¶ 11, 977 P.2d 518, *cert. denied,* 994 P.2d 1271 (Utah 1999).[4]

## VEHICLE SERVICE CONTRACT AS CONTRACT OF INSURANCE

■ ¶ 14 The general rule in Utah is that a party may recover attorney fees only when provided for by statute or contract. *See, e.g., Turtle Management, Inc. v. Haggis Management,Inc.,* 645 P.2d 667, 671 (Utah 1982); *Collier v. Heinz,* 827 P.2d 982, 983 (Utah Ct.App.1992). Our courts have carved out a narrow exception to this rule in the insurance context. *See Canyon Country Store v. Bracey,* 781 P.2d 414, 420 (Utah 1989); *Zions First Nat'l Bank v. National Am. Title Ins. Co.,* 749 P.2d 651, 657 (Utah 1988) (citing *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 802 (Utah 1985)); *Collier,* 827 P.2d at 984. When an insurance company breaches the implied covenant to perform its obligations in good faith, the insured can recover his or her attorney fees as consequential damages of the breach. *See Collier,* 827 P.2d at 984; *Zions,* 749 P.2d at 657. North American challenges the trial court's conclusion that the service contract was a contract of insurance.

■ ¶ 15 The question of what makes a contract a "contract of insurance" for purposes of this narrow exception has never been answered by Utah's appellate courts. The Utah Insurance Code defines insurance as "an arrangement, contract, or plan for the transfer of a risk or risks from one or more persons to one or more other persons." Utah Code Ann. § 31A–1–301(48)(a)(i) (Supp. 1999). *Black's Law Dictionary* defines insurance as, inter alia, "[a]n agreement by which one party for a consideration promises to pay money or its equivalent or to do an act valuable to other party upon destruction, loss, or injury of something in which other party has an interest." *Black's Law Dictionary* 721 (5th ed.1979).

¶ 16 Under either of these definitions, the Vehicle Service Contract issued by North American to Pugh was an insurance contract. Both parties agree that the sole purpose of the contract was to shift the risk of financial loss due to vehicle breakdown from Pugh to North American. Pugh paid North American to obtain this peace of mind: If his car should break down during the warranty period, North American would absorb the cost of any necessary repairs. It is all but conceded by North American that the contract served the exact same purpose as an insurance contract, although styled as a Vehicle Service Contract rather than as "Automobile Repair Insurance."

■ ¶ 17 North American primarily relies on a statutory argument in an effort to persuade us that its service contract should not be treated as an insurance contract. It ar-

---

4. North American did make one other challenge to the trial court's award of attorney fees to Pugh. As we understand the argument, North American contends the trial court's award was improper because the court failed to make a finding that Pugh's claim for payment by North American was not at least "fairly debatable."

This argument is unavailing for two reasons. First, the bulk of this argument is made for the first time in the reply brief. An issue raised for the first time in the reply brief will generally not be considered on appeal. *See Romrell v. Zions First Nat'l Bank,* 611 P.2d 392, 395 (Utah 1980). Second, the question of whether Pugh's claim was "fairly debatable" is a legal conclusion to be

drawn from the trial court's findings rather than a finding in its own right. *See Billings v. Union Bankers Ins. Co.,* 918 P.2d 461, 464 (Utah 1996). The trial court found that the transmission breakdown was "covered by the warranty agreement" and that North American "delayed unreasonably in ... paying for covered repairs when the need was established." These findings compel the legal conclusion that North American's liability was crystal clear under the warranty contract and was in no sense debatable. Failure of the trial court to make a legal conclusion, when its findings are adequate, is harmless error. *See Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983).

gues that because service contracts are defined distinctly from insurance contracts in the Utah Insurance Code, they are exempted from the provisions of the Code. *See* Utah Code Ann. § 31A–1–103(3)(j) (1999).[5] According to North American, this means a service contract cannot be considered an insurance contract for purposes of awarding attorney fees. This argument is not persuasive.

¶ 18 The Utah Insurance Code was "enacted primarily for the purpose of regulating insurance companies, agents, brokers, solicitors and adjusters." *Farrington v. Granite State Fire Ins. Co.*, 120 Utah 109, 232 P.2d 754, 756 (1951) (decided under prior version of statute). The Insurance Code does not attempt to provide an exhaustive definition of what is and what is not insurance for purposes beyond the regulatory scheme contained in the Code. On the contrary, the Code itself explicitly recognizes that there is insurance which is not encompassed by the Code.

¶ 19 For example, the Utah Insurance Code specifically exempts from its purview "ocean marine *insurance*" and many types of "employee and labor union group or blanket *insurance*." Utah Code Ann. § 31A–1–103(3)(b) & (h) (1999) (emphasis added). Of course, this does not mean that these types of insurance policies are somehow not "insurance." Rather, like any other insurance, these types of policies shift risk from the insured to the insurer and meet the criteria of "insurance" as defined by both the Utah Insurance Code and *Black's Law Dictionary*. Exclusion of such types of insurance from the scope of the Code merely indicates that, for various policy reasons, the Legislature has determined they do not require comprehensive regulation under Utah's Insurance

Code. The fact that a service contract is not subject to such regulation, then, is completely unrelated to the policy concerns surrounding whether or not a service contract is an insurance contract for purposes of awarding attorney fees as consequential damages and has no bearing on our determination.[6]

¶ 20 Although there is no Utah opinion which has been called to our attention that provides a definitive definition of an insurance contract, the case law does clearly set out the policy reasons for allowing attorney fees to be collected as consequential damages for a breach of the covenant of good faith implicit in such a contract. *See Beck*, 701 P.2d at 802. Our Supreme Court in *Beck* stated that insurance contracts are to be treated differently than other contracts for the simple reason that

> [a]n insured frequently faces catastrophic consequences if funds are not available within a reasonable period of time to cover an insured loss; damages for losses well in excess of the policy limit, such as for home or business, may therefore be foreseeable and provable.

*Id.*

¶ 21 The policy concerns that led the Utah Supreme Court to allow for recovery of attorney fees applies with equal vigor to North American's breach of the service contract in this case. Pugh's vehicle was stranded in Cedar City for an entire year due to North American's refusal to pay for the necessary repairs. North American's actions resulted in foreseeable and provable consequential damages to Pugh, including the attorney fees he had to incur in an ultimately successful effort to recover his due. *See Zions*, 749 P.2d at 657 ("Attorney fees incurred by an

---

5. Section 31A–1–103(3)(j) (1999) provides:
   (3) Except as otherwise provided, this title does not apply to:
   . . . .
   (j) manufacturer's warranties or service contracts paid for with separate or additional consideration.

6. If anything, the lack of state regulation might strengthen, rather than weaken, the case for allowing attorney fees to be awarded as consequential damages. The Insurance Department has at its disposal a variety of measures for promoting good behavior by regulated insurers. *See, e.g.*, Utah Code Ann § 31A–2–202 (1999) (authority to request reports from any person subject to regulation under the Insurance Code); *id.* § 31A–2–203 (authority to examine records of any licensee under the Insurance Code); *id.* § 31A–2–308 (Supp.1999) (authority to impose monetary penalties for violations of the Insurance Code). Awarding attorney fees as consequential damages for breach of an unregulated insurer's duties may be one of the few ways to get its attention and promote its good behavior.

insured in suing its insurer because of such a breach [of the implied covenant of good faith performance] would be recoverable consequential damages because they plainly are reasonably foreseeable by the parties at the time the contract is made."). We therefore affirm the trial court's conclusion that the Vehicle Service Contract between North American and Pugh was a contract of insurance for purposes of awarding attorney fees to Pugh.[7]

## BREACH OF IMPLIED DUTY OF GOOD FAITH PERFORMANCE

¶ 22 North American argues that, in any event, the award of attorney fees was erroneous because the trial court never made a specific finding that the company had breached its implied duty to perform its obligations under the insurance contract in good faith. Of course, to recover attorney fees for breach of an insurance contract, the insured must demonstrate that the insurer has breached the implied covenant to act in good faith in its performance of the insurance contract. *See Collier v. Heinz*, 827 P.2d 982, 984 (Utah Ct.App.1992). Given this duty, the insurer will "at the very least ... investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985).

¶ 23 Whether the implied covenant of good faith performance was breached by North American is a fact-intensive inquiry, ordinarily left for the fact-finder. *See Brown v. Weis*, 871 P.2d 552, 564–65 (Utah Ct.App. 1994). When the trial court is the fact-finder, as in the instant case, and the underlying historical facts as found by the court clearly show that a breach of the implied covenant has occurred, then the determination of whether the covenant has been breached is more akin to a finding of ultimate fact or a conclusion of law.[8] *Cf. id.* at 565 (holding question of whether breach occurred is for the finder of fact *if* "many of the key historical facts ... are in dispute"). *See also* Arthur L. Corbin, *Corbin on Contracts*, § 654B (Supp.1993) (noting that while "good faith always involves questions of fact, ... it often involves questions of law"). Here, the findings made by the trial court concerning North American's performance leave no room for doubt that it breached the implied duty of good faith performance. For example, the court's Finding 20 states:

> There was substantial evidence that the transmission needed to be replaced from the first inspection by defendant's agent ... but defendant refused to either accept the evidence or pursue additional investigation[.]

Finding 21 recites:

> Defendant delayed unreasonably in both investigating the loss and in authorizing and paying for covered repairs when the need was established.

Finally, Finding 22 states:

> Even after the repair need was established ... defendant first delayed in authorizing the repairs, then defendant authorized the repairs, but refused to follow the payment

---

7. Our decision does not expand this exception regarding attorney fees beyond its narrow application to insurance contracts. As we previously noted, an expansive view of the exception "is not reasonable because it would eviscerate the general rule; attorney fees would be awarded virtually every time a party is found in breach of its contract." *Collier v. Heinz*, 827 P.2d 982, 984 (Utah Ct.App.1992). This concern, while valid, does not apply in this case. Unlike *Collier*, which involved the breach of a settlement agreement, this case involved the breach of a contract of insurance. The sole purpose of the contract was to shift the risk of a covered vehicle breakdown from Pugh to North American. By upholding the trial court's conclusion that the service contract is an insurance contract for

purposes of awarding attorney fees, we are simply following the law as laid out by *Beck* and its progeny. Our decision in no way endorses the expansion of this narrow exception beyond the realm of contracts fairly characterized as insurance contracts.

8. Even if the determination that the implied covenant of good faith performance has been breached is itself properly viewed as a finding of fact, the result in this case would be the same. Although the trial court did not make a specific factual finding that North American breached the implied covenant, this specific finding is implicit in Findings 11, 12, 16, 17, 20, 21, and 22. *See infra* note 9 and accompanying text.

procedure required by the contract and, finally, when defendant proffered payment (almost eleven months after the loss), it deducted sums without justification and in direct contravention of the Interim Agreement.

These findings by the trial court make it clear that North American did not "diligently investigate the facts," "fairly evaluate the claim," or "act promptly and reasonably in rejecting or settling the claim" in its dealings with Pugh. Even though it never expressly stated the purpose for which such findings were made and did not state its conclusions of law in terms of this exact phraseology, the court made numerous detailed findings concerning North American's lack of good faith performance.[9] We therefore uphold the trial court's award of attorney fees to Pugh.

## ATTORNEY FEES ON APPEAL

¶ 24 Pugh was awarded his attorney fees and costs at trial and, as should be clear, he has prevailed on appeal. "[W]hen a party who received attorney fees below prevails on appeal, 'the party is also entitled to fees reasonably incurred on appeal.'" *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) (quoting *Utah Dep't of Soc. Servs. v. Adams*, 806 P.2d 1193, 1197 (Utah Ct.App.1991)). Accordingly, we remand the case for the limited purpose of calculating and awarding Pugh the attorney fees and costs he has reasonably incurred on appeal.

## CONCLUSION

¶ 25 In the absence of a transcript, we uphold the trial court's award of damages to Pugh for loss of the use of his vehicle. We also uphold the trial court's determination that the Vehicle Service Contract between Pugh and North American was a contract of insurance for purposes of awarding attorney fees as consequential damages. In addition, we conclude that the court made adequate findings establishing that North American breached the implied covenant of good faith performance, and we therefore uphold the court's award of attorney fees to Pugh. We remand only for the trial court to additionally award the fees and costs Pugh reasonably incurred in bringing this appeal.

¶ 26 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and MICHAEL J. WILKINS, Judge.

---

9. In addition to the findings quoted in the text, Findings 11, 12, 16, and 17 also address the lack of timely and fair performance by North American and further demonstrate that it did breach the implied covenant of good faith performance.