2001 UT App 209

James DISHINGER and Nancy Dishinger dba TCBY Yogurt, Plaintiffs, Appellants, and Cross-appellees,

v.

Jana POTTER dba Silver Queen Hotel, Defendant, Appellee, and Cross-appellant.

No. 20000081–CA.

Court of Appeals of Utah.

June 28, 2001.

Rehearing Denied July 16, 2001.

Dwayne A. Vance and David B. Thompson, Park City, for Appellants.

Robert M. Felton, Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiffs James and Nancy Dishinger dba TCBY Yogurt (the Dishingers) appeal the trial court's judgment finding them in unlawful detainer. Defendant Jana Potter dba Silver Queen Hotel (Potter) cross-appeals the trial court's refusal to instruct the jury on the meaning of "prevailing rate" and its failure to award her administrative, late, and attorney fees. We reverse and remand.

## BACKGROUND

¶ 2 In May of 1990, Erik Ziskend entered into a commercial lease with Potter for premises located on Main Street in Park City, Utah. On May 31, 1994, Ziskend assigned the lease to the Dishingers. Potter consented to the assignment. The Dishingers operated a frozen yogurt shop on the premises.

¶ 3 The lease provided for continuous three year options after expiration of the initial three year lease term. Under the terms of the lease, the Dishingers, as tenants, were required to notify Potter in writing of their desire to exercise the option 120 days prior to the expiration of the current lease term. The lease specified that the rental rate for an option period would be "adjusted upward, but not less than the current Minimum Monthly Rent being paid, to the then prevail-

ing rental rate of similar buildings in the Main Street area of Park City, Utah."[1]

¶ 4 On February 1, 1996, the Dishingers notified Potter in writing of their desire to exercise the lease renewal option. Thereafter, the following correspondence took place. On April 4, 1996, Potter advised the Dishingers that the prevailing rental rate of similar buildings on Main Street in Park City was $30 per square foot and thus, pursuant to the lease, $30 per square foot ($2,425.00/month) would constitute the new base monthly rent. The Dishingers responded that, based on the appraisal they had performed, the prevailing rental rate of similar buildings was $19 per square foot ($1,535.83/month).

¶ 5 At the commencement of the July 1, 1996 renewal period, without an agreement as to what would constitute the base monthly rent, the Dishingers began paying rent in an amount reflecting their appraisal of $19 per square foot. They sent Potter a check for $1,976.92, clearly noting it was for "New Base Rent." On July 8, 1996, Potter sent the Dishingers a notice of default on the grounds that the Dishingers were $889.17 delinquent in their July rental payment. On July 13, 1996, Potter served the Dishingers with a notice to pay the remaining rent or quit. On July 15, 1996, Potter negotiated the Dishinger's July 1 rent check. On the first of every month, from July 1996 through June 1997, the Dishingers sent Potter a check for $2,137.11[2] reflecting $19 per square foot in base monthly rent. Potter negotiated each of those checks.

¶ 6 On August 8, 1996, the Dishingers filed a declaratory judgment action asking the trial court to interpret the lease provision regarding the monthly rental rate. Potter counter-claimed for breach of lease and unlawful detainer.

¶ 7 After a jury trial, the jury returned a special verdict answering a number of factual questions. In the special verdict the jury found there was a legitimate dispute as to the "then prevailing rental rate," that the Dishingers tendered payment to Potter in full satisfaction of the disputed amount based on their appraisal of $19, and that Potter accepted the rent payments after the July 13 notice to quit. The jury also found the "then prevailing rental rate" to be $25 per square foot, and as such, Potter was entitled to recover the balance of base rent, totaling $8,730.

¶ 8 The Dishingers filed a motion for entry of judgment based on the special verdict, arguing that the jury's special verdict established an accord and satisfaction, which fixed the base rental rate at $19 per square foot, and thus, they were current in monthly payments and Potter's unlawful detainer claim should be dismissed. The Dishingers also argued that a determination that they were in' unlawful detainer of the premises was precluded because Potter accepted rental payments after serving the notice to quit, thus waiving forfeiture of the lease.

¶ 9 The trial court, first Judge Brian, then Judge Hilder in an amended judgment, entered judgment for Potter. The trial court concluded that, based on the findings of the jury in its special verdict, it was "clear" that while Potter accepted payments after the notice to quit, the amount received "did not represent a full payment of base rent," and thus did not constitute an accord and satisfaction. Thus, the trial court concluded the Dishingers were in unlawful detainer and entered judgment in favor of Potter for $8,730, which was trebled to $26,190 pursuant to Utah Code Ann. § 78–36–10 (1996). This appeal followed.

¶ 10 On appeal, the Dishingers argue the trial court was precluded from determining they were in unlawful detainer because the jury's special verdict established an accord and satisfaction as a matter of law. Alternatively, the Dishingers argue that Potter affirmed the lease by accepting rent payments, thereby waiving forfeiture of the lease, and thus precluding a finding of unlawful detainer.

---

1.  From a review of the record it appears that the Dishingers were paying $18.48 per square foot in minimum monthly rent at the time they notified Potter of their desire to exercise the option.

2.  The Dishingers subtracted $160.19 from the July 1, 1996 rental payment for remaining credits and premature Consumer Price Index increases occurring in 1994 and 1995.

¶ 11 Potter cross-appeals, arguing the trial court should have instructed the jury that the "then prevailing rental rate" meant market rate. Potter also argues the trial court erred by failing to award her administrative fees, late fees, and attorney fees as required by the lease.

## ANALYSIS

### I. Preliminary Issues

¶ 12 In addition to the claims raised in her cross-appeal, Potter asserts that the Dishingers failed to preserve their claims below, failed to provide a transcript of the proceedings and marshal the evidence, and cannot rely on the jury's special verdict because it was merely advisory. Before addressing the main substantive issues on appeal, we first address these threshold arguments.

### A. Preservation of Claims

¶ 13 Potter first argues the Dishingers failed to preserve their claim of accord and satisfaction in accordance with Rule 24(a)(5)(A) of the Utah Rules of Appellate Procedure. Rule 24(a)(5)(A) provides that "[t]he brief of the appellant shall contain ... citation to the record showing that the issue was preserved in the trial court." Utah R.App. P. 24(a)(5)(A). The Dishingers reference several places in the record to show that the issue of accord and satisfaction was preserved in the trial court.[3] Thus, Potter's argument that the Dishingers did not preserve the issue of accord and satisfaction is without merit.[4]

### B. Marshaling the Evidence

¶ 14 Potter next argues the Dishingers needed to provide a transcript of the proceedings to allow meaningful review of the evidence, and have also failed to marshal the evidence. A transcript of the proceedings is not required because the Dishingers are relying on the jury's special verdict on appeal, not the evidence presented at trial. *See, e.g., Pugh v. North Am. Warranty Servs., Inc.,* 2000 UT App 121, ¶ 11, 1 P.3d 570. Moreover, the marshaling requirement applies only when challenging findings of fact. *See Moon v. Moon,* 1999 UT App 12, ¶ 24, 973 P.2d 431. Clearly, the Dishingers are not challenging findings of fact. Rather, they are challenging the trial court's application of the law to the jury's special verdict findings and thus the Dishingers do not have the burden of marshaling the evidence.

### C. Advisory Jury Verdict

¶ 15 Relying on *Peirce v. Peirce,* 2000 UT 7, 994 P.2d 193, Potter next argues that the jury's special verdict was merely advisory, and therefore the trial court was not bound by the jury's findings in the special verdict. Potter's reliance on *Peirce* is misplaced. In *Peirce,* the issue before the court was "whether the jury served in an advisory

---

3. The Dishinger's citations to the record reference the jury's special verdict; the Dishinger's motion for entry of judgment based on special verdict; the Dishinger's memorandum in support of motion for relief from judgment; and the Dishinger's supplemental memorandum in support of motion for relief from judgment. In all these instances the issue of accord and satisfaction was raised in the trial court.

4. We note the issue of accord and satisfaction was not raised in the pleadings. However, Rule 15(b) of the Utah Rules of Civil Procedure provides that issues not raised in the pleadings may be tried by express or implied consent. *See* Utah R. Civ. P. 15(b). "If an issue is fully tried, a court may decide the issue and deem the pleadings amended even if the issue was not originally pleaded." *Shinkoskey v. Shinkoskey,* 2001 UT App 44, ¶ 6 n. 2, 19 P.3d 1005 (citing *Fisher v. Fisher,* 907 P.2d 1172, 1176 (Utah Ct.App.1995) (citation omitted)). "Whether the pleadings may be deemed amended depends on whether the opposing party had a fair opportunity to [prepare and meet the issue]." *Id.* (citing *Colman v. Colman,* 743 P.2d 782, 785 (Utah Ct.App.1987)). It must be evident from the record that the issue has been tried. *See id.* (citing *Fisher,* 907 P.2d at 1176).

A review of the record reveals that evidence regarding the existence of an accord and satisfaction was presented at trial, and the jury was instructed on and made findings of fact that would support an accord and satisfaction. Additionally, the Dishingers argued accord and satisfaction in their motion for entry of judgment based on special verdict, which Potter had the opportunity to rebut, and the trial court entered judgment finding there was no accord and satisfaction. Thus, because Potter had the opportunity to prepare and meet the issue, we conclude that the issue of an accord and satisfaction was tried by implication.

capacity or whether [the] case was tried by a jury as a matter of right." *Id.* at ¶ 12. However, the plaintiff in *Peirce* was seeking an equitable remedy. *See id.* "When a jury is used in an equity case, it acts in an advisory capacity," *id.* (quoting *Romrell v. Zions First Nat'l Bank,* 611 P.2d 392, 394 (Utah 1980) (quotation and citation omitted)), " 'unless both parties have *clearly consented* to accept a jury verdict.' " *Id.* at ¶ 13 (quoting *Romrell,* 611 P.2d at 394); *see also* Utah R. Civ. P. 39(c). Because the parties did not clearly consent to accept a jury verdict, and the record indicated that the trial court treated the jury as advisory, the court held that the jury served only in an advisory capacity and thus afforded no deference to its findings. *See id.* at ¶ 15.

¶ 16 In the instant case, we are not dealing with an action in equity. Both the Dishingers and Potter pursued legal claims, the Dishingers specifically demanded a jury trial on those claims, and at no time did the trial court inform the parties or the jury that the jury was merely advisory. *Cf. Goldberg v. Jay Timmons & Assocs.,* 896 P.2d 1241, 1244 (Utah Ct.App.1995) (stating, "if the trial court had intended ... to use an advisory jury, it should have notified the parties before the trial began"). Where, as here, the case is tried to a jury as a matter of right, Rule 49(a) of the Utah Rules of Civil Procedure permits the trial court to "require a jury to return only a special verdict in the form of a special written finding upon each issue of fact." Utah R. Civ. P. 49(a). "The [trial] court then applies the law to the facts as found and renders a verdict." *Brigham v. Moon Lake Elec. Ass'n,* 24 Utah 2d 292, 298, 470 P.2d 393, 397 (1970) (Ellett, J., further opinion) (commenting on Rule 49(a)).

■ ¶ 17 As Justice Ellett explained in *Brigham:*

> The special verdict was devised to relieve the jury of attempting to apply the law in a complicated case to the facts in arriving at a verdict. Instructions to the jury are thus simplified, and the jurors may, therefore, concentrate upon the functions which belong to them, viz., to find the facts in the case.

*Id.* Thus, "[i]n [the] case of a special verdict, the jury only finds the facts, and the court applies the law thereto and renders the verdict." *Id.* This is what occurred in the instant case. The trial court instructed the jury: "[I]t is your *exclusive duty to determine the facts* in this case, and to consider and weigh the evidence for that purpose"; "You are the *exclusive judges of the facts and the evidence.*" (Emphasis added.) The trial court then entered judgment, "*Based upon* the evidence and *the special verdict.*" (Emphasis added.) Thus, the jury was not merely advisory. Rather, the jury found the facts as set forth in its special verdict and the trial court entered judgment applying the law to those facts.

## II. Accord and Satisfaction

■ ¶ 18 The Dishingers argue that an accord and satisfaction occurred prior to trial which set the rental rate at $19 per square foot thus precluding a finding of unlawful detainer. They claim the jury's special verdict answers require a legal determination of accord and satisfaction. Whether the special verdict established an accord and satisfaction is a question of law which we review for correctness without any deference to the trial court. *See ProMax Dev. Corp. v. Raile,* 2000 UT 4, ¶ 17, 998 P.2d 254.

### A. Elements of Accord and Satisfaction

■ ¶ 19 To establish an accord and satisfaction, three elements must be present: "(1) an unliquidated claim or a bona fide dispute over the amount due; (2) a payment offered as full settlement of the entire dispute; and (3) an acceptance of the payment as full settlement of the dispute." *Id.* at ¶ 20 (citing *Marton Remodeling v. Jensen,* 706 P.2d 607, 609–10 (Utah 1985)).

### 1. Bona Fide Dispute Over Amount Due

■ ¶ 20 To satisfy the first element, "There must be a good-faith disagreement over the amount due under the contract. The disagreement need not be well-founded, so long as it is in good faith." *Estate Landscape & Snow Removal Specialists, Inc. v. Mountain States Tel. & Tel. Co.,* 844 P.2d 322, 326 (Utah 1992) (citing *Golden Key Realty, Inc. v. Mantas,* 699 P.2d 730, 733 (Utah

1985); *Ashton v. Skeen*, 85 Utah 489, 496, 39 P.2d 1073, 1076 (1935)). The jury clearly found that there was a good faith disagreement over the amount due under the lease.[5] The jury was asked:

Considering all of the evidence in this case, do you find by a preponderance of the evidence that a legitimate dispute existed as to the "then prevailing rental rate of similar buildings in the Main Street area of Park City" at the time the [Dishingers] made monthly rental payments based on $19 per square foot as satisfaction in full?

To this question the jury answered, "Yes." Thus, the first element of accord and satisfaction was established by the jury's special verdict.

#### 2. Payment Tendered in Full Satisfaction of Dispute

¶ 21 The jury found that the payments tendered by the Dishingers were made in full satisfaction of the disputed rent. The jury was asked: "Considering all the evidence in this case, do you find by a preponderance of the evidence that the [Dishingers] notified [Potter] that these payments were made in full satisfaction of the disputed rent amount?" The jury answered, "Yes." Thus, the second element of accord and satisfaction was established by the jury's special verdict.

#### 3. Acceptance of Payment as Full Settlement of Dispute

¶ 22 In *Estate Landscape*, the Utah Supreme Court reasoned that the third element

of accord and satisfaction may be satisfied by the creditor's subjective intent to discharge an obligation by assenting to the accord, *or* conduct which gives rise to a reasonable inference that acceptance of payment discharged the obligation. *See Estate Landscape*, 844 P.2d at 330.

¶ 23 In the instant case, the jury found that Potter accepted the monthly payments made by the Dishingers. The jury was asked: "Considering all of the evidence in this case, do you find by a preponderance of the evidence that [Potter] accepted the monthly rent payments made by the [Dishingers] which are calculated at a rate of $19 per square foot?" The jury answered, "Yes." However, the jury did not make a finding that Potter subjectively intended to assent to the accord. The fact that Potter counterclaimed for breach of the lease and unlawful detainer shows she did not subjectively intend to assent to the accord. Thus, to find an accord and satisfaction, we must determine whether Potter's conduct established the accord and satisfaction as a matter of law.

¶ 24 In *Estate Landscape*, the defendant sent the plaintiff a check for $8,613, and followed it with a letter stating that the check was "payment in full for satisfaction of contracted services. If you are not willing to accept that sum, ... in full satisfaction of the sums due, DO NOT negotiate the check, for

---

5. Although neither party has addressed this issue in their briefs, we note at the outset that the option provision in the lease is most likely unenforceable in Utah. It is a well-recognized principle that, "A condition precedent to the enforcement of any contract is that there be a *meeting of the minds* of the parties, which must be spelled out, either expressly or implicitly, with sufficient definiteness to be enforced." *Pingree v. Continental Group of Utah, Inc.*, 558 P.2d 1317, 1321 (Utah 1976) (emphasis added) (citation omitted). In *Pingree*, the Utah Supreme Court stated,

"a provision for the extension or renewal of a lease must specify the time the lease is to extend and the rate to be paid with such a degree of certainty and definiteness that nothing is left to future determination. If it falls short of this requirement, it is not enforceable."

*Id.* at 1321 (quoting *Slayter v. Pasley*, 199 Or. 616, 264 P.2d 444, 446 (1953)).

In the instant case, the lease provided that the rental rate for the renewal period would be "the then prevailing rental rate of similar buildings in the Main Street area of Park City." On July 1, 1996, the commencement of the renewal period, the parties had yet to agree on what constituted "the then prevailing rental rate of similar buildings in the Main Street area of Park City." Both parties had communicated to the other a vastly different rate and interpretation, and the Dishingers filed a declaratory judgment action asking the trial court to interpret the provision. Thus, it cannot be said that the rate provided for in the option provision of the lease possesses the certainty and definiteness required to be enforced. In sum, there was no meeting of the minds, and as a result, no agreement. Therefore, the lease terminated by its own terms as of July 1, 1996. However, because we conclude that an accord and satisfaction occurred, the unenforceability of the option provision does not affect our analysis.

upon your negotiation of that check, we will treat the matter as fully paid." *Id.* at 324–25 (emphasis omitted). The plaintiff filed suit to recover the $30,162.50 it thought it was owed by the defendant, then negotiated the $8,613 check, and amended its complaint to recover the difference. *See id.* at 325.

¶ 25 The trial court ruled that negotiation of the check did not constitute an accord and satisfaction. *See id.* This court affirmed, over Judge Jackson's dissent, reasoning that the defendant's letter was "entirely unilateral," and that the plaintiff's

> signature on the check is not an assent to an accord not found on the face of the check as a restrictive endorsement, where the party to whom the accord is offered has expressly rejected the proposed accord, continued the dispute, and filed litigation to resolve it adversarially in court.

*Estate Landscape & Snow Removal Specialists, Inc. v. Mountain States Tel. & Tel. Co.,* 793 P.2d 415, 419–20 (Utah Ct.App.1990) (footnote omitted), *rev'd,* 844 P.2d 322 (Utah 1992).

¶ 26 The Utah Supreme Court disagreed and reversed, holding, "Where, as here, the check is tendered under the condition that negotiation will constitute full settlement, mere negotiation of the check constitutes the accord, regardless of the payee's efforts or intent to negate the condition." *Estate Landscape,* 844 P.2d at 330. Thus, " '[w]hat is said is overridden by what is done, and assent is imputed as an inference of law.' " *Id.* (quoting *Hudson v. Yonkers Fruit Co.,* 258 N.Y. 168, 179 N.E. 373, 374 (1932)); *see also Marton Remodeling v. Jensen,* 706 P.2d 607, 609 (Utah 1985) (holding negotiation of check with restrictive condition is an accord and satisfaction even though creditor wrote "not full payment" beneath condition prior to negotiation); *Cove View Excavating & Constr. Co. v. Flynn,* 758 P.2d 474, 478 (Utah Ct.App.1988) (finding an accord and satisfac-

tion even though creditor crossed out restrictive condition on check before negotiation).

¶ 27 In the instant case, the Dishinger's first check noted the amount thereof was for "New Base Rent." Therefore, because Potter negotiated the check, which was tendered by the Dishingers in full satisfaction of the disputed amount of the base monthly rent, the fact that Potter at the same time brought an action for breach of lease and unlawful detainer is of no legal consequence.[6] The third and final element of accord and satisfaction was established by Potter's conduct.

## B. Special Verdict

¶ 28 In its special verdict, the jury found: (1) "that a legitimate dispute existed as to the 'then prevailing rental rate of similar buildings in the Main Street area of Park City' at the time the [Dishingers] made monthly rental payments based on $19 per square foot as satisfaction in full;" (2) the Dishingers "notified [Potter] that [the] payments were made in full satisfaction of the disputed amount;" and (3) Potter "accepted the monthly rent payments made by the [Dishingers] ... at a rate of $19 per square foot."

¶ 29 However, the jury also found that the prevailing rental rate was $25 per square foot, and that Potter was entitled to recover the "balance of base rent" from the Dishingers, totaling $8,730. Based on these findings, the trial court entered judgment for Potter, concluding that no accord and satisfaction existed and that the Dishingers were in unlawful detainer because the amount Potter received and accepted each month was less than what the jury subsequently determined to be the rental rate.

¶ 30 Although it could be argued that the special verdict supports inconsistent legal theories (accord and satisfaction and unlawful detainer), the inconsistency is not fatal. The jury was instructed to answer all

---

6. In response, Potter attempts to rely on language from *Tates, Inc. v. Little America Refining Co.,* 535 P.2d 1228 (Utah 1975), wherein our supreme court stated, "Ordinarily, the payment of part of a debt does not discharge it.... The reason for this is that in making the part payment, the debtor is doing nothing more than he is legally obligated to do." *Id.* at 1229. This general statement is true, to the extent that there is no "dispute or uncertainty as to the amount due." *Id.* at 1229–30. In the instant case it is well established that there is a dispute as to the amount due.

factual questions on all legal theories presented in the special verdict. While the jury's findings support inconsistent legal claims, a court is not precluded, under Rule 49(a), from applying the law to those findings and entering judgment for a party on one theory, as a matter of law, which precludes judgment on another inconsistent legal theory. *See Milligan v. Capitol Furniture Co.*, 8 Utah 2d 383, 387, 335 P.2d 619, 622 (1959) (holding inconsistent special verdict answers immaterial under Utah R. Civ. P. 49(a)); *see also Tsudek v. Target Stores, Inc.*, 414 N.W.2d 466, 469–70 (Minn.Ct.App.1987) (finding inconsistent special verdict answers reconcilable where jury was simply answering all questions submitted based on the evidence). Thus, as was the case here, if the special verdict findings support, as a matter of law, an accord and satisfaction then there cannot be an unlawful detainer.

### C. Effect of Lease Provision

¶ 31 Potter responds that even if the jury's special verdict findings support an accord and satisfaction, the lease itself precludes an accord and satisfaction. Potter relies on the "Waiver" provision of the lease which states:

> The waiver by Landlord of any term, covenant or condition herein contained shall not be deemed to be a waiver of such terms, covenant or condition or any subsequent breach of the same or any other term, covenant or condition herein contained. *The subsequent acceptance of rent hereunder by Landlord shall not be deemed to be a waiver of any preceding default by Tenant of any term, covenant or condition of this Lease, other than the failure of Tenant to pay particular rent also accepted,* regardless of Landlord's knowledge of such preceding default at the time of the acceptance of such rent.

(Emphasis added.) Potter asserts that under this lease provision, "acceptance of partial rent could not constitute an accord and satisfaction."

¶ 32 Though not perfectly drafted, the boilerplate language of this "Waiver" provision is not ambiguous. The relevant portion, emphasized above, provides that if the Dishingers default on any term, covenant, or condition of the lease, and thereafter tender a rental payment to Potter, and Potter accepts, by accepting, Potter has not waived the prior defaults. For example, if the Dishingers install exterior lighting as prohibited by the lease, the installation, if not cured within thirty days of notice, is a default. If, thereafter, the Dishingers send Potter a rent check which Potter accepts, Potter has not waived the Dishinger's default for the installation. However, if the Dishinger's default for failure to pay rent, and thereafter tender a rental payment to Potter, which Potter accepts, Potter thereby waives the Dishinger's default for failure to pay rent.

¶ 33 What the lease provision does not provide, is that acceptance of partial rent does not constitute an accord and satisfaction. In fact, the term "accord and satisfaction" is conspicuously absent from the face of the lease, and beyond the "Waiver" provision, Potter fails to point to any language in the lease that would support her strained construction. Additionally, and perhaps more importantly, Potter cannot claim that the initial check tendered by the Dishingers was "partial rent," when there was never an agreement as to what would actually be the rental rate. While hindsight suggests that Potter should have provided for such a situation in the lease, we cannot write such a provision into the lease for her. *See Jones v. ERA Brokers Consol.*, 2000 UT 61, ¶ 18, 6 P.3d 1129; *see also Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 505 (Utah 1980); *Provo City Corp. v. Nielson Scott Co.*, 603 P.2d 803, 806 (Utah 1979). Thus, Potter's argument that the lease prohibits an accord and satisfaction is not supported by the lease itself.

¶ 34 In sum, the jury's special verdict established as a matter of law an accord and satisfaction. The trial court erred in not entering a judgment on the rental rate for the option period in favor of the Dishingers. We therefore reverse the trial court's judgment of unlawful detainer and remand for the entry of a judgment for the Dishingers based on the legal theory of accord and satisfaction setting the rental rate at $19 per

square foot.[7]

### III. Administrative, Late, and Attorney Fees

¶ 35 Potter argues that the lease provides that the Dishingers shall pay administrative, late, and attorney fees. Potter submitted her claims for administrative and late fees to the jury. In its special verdict, the jury found that, in addition to what the Dishingers had already paid to Potter, Potter was only entitled to the "Balance of base rent." Based on this finding, the trial court determined that Potter was not entitled to administrative and late fees. However, this was properly a legal not a factual determination. The lease is clear and unambiguous that Potter was entitled to administrative fees. The lease states in no uncertain terms that the tenant shall pay for all costs and fees associated with supervising and administering to the common areas.[8]

¶ 36 The Dishingers respond that Potter's argument for administrative fees was not presented below. However, the trial court clearly ruled on the issue based on the jury's special verdict findings. Thus, Potter's claim for administrative fees was presented below. Therefore, we reverse and remand to the trial court for an award of Potter's administrative fees.

¶ 37 The lease further provides:

Tenant shall pay to Landlord a *late charge* of ten ($10.00) dollars per day until the amount due is paid in full. Tenant further agrees to pay any attorney's fees [sic] incurred by Landlord by reason of Tenant's failure to pay rent and/or other charges when due hereunder.

(Emphasis added.) Thus, Potter was only entitled to late fees and attorney fees under this provision if the Dishingers failed to pay rent. Because we conclude there was an accord and satisfaction, the Dishingers were current on their rent payments and therefore Potter was not entitled to late fees.[9]

¶ 38 The trial court determined that Potter was not entitled to attorney fees because the lease provided that the "prevailing party shall be entitled to recover" its attorney fees, and while Potter prevailed on her counter-claim, the Dishingers prevailed on their claims for an accounting and credit for overcharges of common area expenses. Thus, the trial court determined neither party should be awarded attorney fees because both prevailed.

¶ 39 Because we conclude that there was an accord and satisfaction and thus no unlawful detainer, the "prevailing party" issue as to attorney fees should be reconsidered by the trial court on remand. Therefore, pursuant to the terms of the lease, Potter is entitled to her administrative fees, and we remand to have the trial court determine if either party should be awarded attorney fees as the "prevailing party" under the lease.

### CONCLUSION

¶ 40 We conclude, based on the jury's special verdict, an accord and satisfaction occurred as a matter of law fixing the "then prevailing rental rate" for the option period of the lease at $19 per square foot in base monthly rent. Therefore, because the Dishingers were in lawful possession of the premises, we reverse the trial court's legal determination of unlawful detainer and its award of treble damages. We further conclude that under the terms of the lease, Potter was entitled to her administrative fees and remand for the trial court to determine if ei-

---

7. Because we conclude there was an accord and satisfaction and thereby reverse the trial court's legal conclusion that the Dishingers were in unlawful detainer, we do not address the Dishinger's alternative argument of waiver and Potter's cross-appeal regarding the definition of the term "prevailing rate."

8. Specifically, the lease states that the tenant shall pay
    All costs to supervise and administer said common areas, used in common by the ten-
ants or occupants of the building. [S]aid costs shall include such fees as may be paid to a third party in connection with same and shall in any event include a fee to Landlord to supervise and administer same in an amount equal to ten (10%) of the total costs of (i) above.

9. Potter does not argue she was entitled to attorney fees under this provision.

ther party is entitled to attorney fees as the "prevailing party" under the lease.

¶ 41 I CONCUR: WILLIAM A. THORNE, Jr., Judge.

ORME, Judge (dissenting):

¶ 42 I cannot agree there was an accord and satisfaction in this case. While there was a bona fide dispute over the new rental rate and the Dishingers may well have tendered their payments with the thought it was in full satisfaction of what was due, there is no finding that Potter *accepted* the payments in full satisfaction nor any basis in the evidence to conclude that she did so. On the contrary, the Dishingers and Potter had exchanged letters indicating very different views of what constituted the "then prevailing rental rate." Nothing suggests either side thereafter acceded to the view of the other or that they reached a compromise. On the contrary, within days of accepting the Dishingers' check, Potter sent the Dishingers a default notice stating what she believed the shortfall to be. A couple of weeks later, the Dishingers filed their declaratory judgment action acknowledging there was a dispute between the parties and asking the court to resolve it—not claiming there had been a dispute between the parties that had been resolved by accord and satisfaction and asking the court to enforce the accord.

¶ 43 Applicable law does not require anything inconsistent with the expectations of the parties, as shown by their conduct. The "New Base Rent" notation, apparently made in the "For _____" space on the front of the check, clearly does not satisfy the UCC's requirement that "the instrument or an accompanying written communication contain[ ] a conspicuous statement to the effect that the instrument was tendered as *full satisfaction* of the claim." Utah Code Ann. § 70A-3-311(2) (1997) (emphasis added). In addition, cases relied on by the majority are inapposite. In both *Marton Remodeling v. Jensen*, 706 P.2d 607 (Utah 1985), and *Cove View Excavating & Construction Co. v. Flynn*, 758 P.2d 474 (Utah Ct.App.1988), unlike in this case, the checks evidencing the accord and satisfaction contained actual restrictive endorsement provisions. *See Marton Remodel-*

*ing*, 706 P.2d at 608 ("Endorsement hereof constitutes full and final satisfaction of any and all claims...."); *Cove View*, 758 P.2d at 476 (check contained "pmt. in full" language on front of check and this restrictive endorsement language on back of check: "payment in full for all labor and materials to 6/26/84"). In *Estate Landscape & Snow Removal Specialists, Inc. v. Mountain States Telephone & Telegraph Co.*, 844 P.2d 322 (Utah 1992), a detailed letter made it clear that the check could be accepted only as full payment. *See id.* at 324–25.

¶ 44 As a matter of law, the facts in this case do not establish an accord and satisfaction. The jury recognized this and went on to find that the prevailing rental rate was $25 per square foot and that the Dishingers owed this to Potter under their contract. Does this mean the Dishingers unlawfully detained the premises, subjecting them to treble damages? It does not. Potter, in her "notice to pay rent or quit," demanded payment of a sum well in excess of what she was entitled to contractually. The jury found the prevailing rate was $25, but she had demanded payment of $30. The invalid demand renders the notice completely ineffective to place the Dishingers in a state of unlawful detainer.

¶ 45 When the dust settles in this case, the proper result emerges with reasonable clarity. The Dishingers did not owe as much as Potter thought they did, but they owed more than they thought they did. There was no accord and satisfaction, so they are liable for the shortage. On the other hand, Potter had no right to demand payment of an amount to which she was not entitled, so she may not have the lesser amount to which she was actually entitled trebled, nor is she entitled to any other relief specially available under the unlawful detainer statute. Clearly, then, there is no prevailing party here—each side won a little and lost a little—so neither side is entitled to an award of attorney fees.

¶ 46 On remand, I would simply have the trial court amend its judgment to reflect the foregoing.